764 N.E.2d 681 (2002)
E.H., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 49A02-0105-JV-323.
Court of Appeals of Indiana.
March 4, 2002.
Rehearing Denied April 24, 2002.
*682 Elizabeth Gamboa, Franklin, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
KIRSCH, Judge.
E.H. was adjudicated a delinquent child based upon the finding that he committed theft, a Class D felony[1] if committed by an adult, and found to be in violation of the terms of a previously entered suspended commitment. He now appeals presenting the following two issues for our review:
I. Whether sufficient evidence supports the finding that he committed the act of theft.
II. Whether the juvenile court abused its discretion by committing him to *683 the Department of Correction for a one-year recommended term.
We affirm the adjudication, but vacate the juvenile court's dispositional decree.

FACTS AND PROCEDURAL HISTORY
The facts most favorable to the adjudication reveal that on February 15, 2001, J.W. removed his watch and two necklaces before gym class. He placed the jewelry either on top of or inside his gym bag, which he placed on the bleachers. Two of J.W.'s classmates noticed one of the necklaces hanging a few inches off the bleachers and also noticed E.H. in the gym. One of the boys approached E.H. and told him to get out of the gym. The other boy saw E.H. stand below where the necklace was hanging, take the necklace, place it in his pocket, and leave the gym.
After the gym class, J.W. realized his necklace was missing and asked if anyone knew anything about it. One of his classmates told him what he had seen. J.W. and this classmate reported the incident to the principal, who began an investigation. Initially, E.H. denied any knowledge of the necklace; but later told the principal that he thought the necklace belonged to one of his friends and that he planned to return it to his friend that day. The principal searched E.H.'s locker and found the necklace in a zippered coat pocket.
The State charged E.H. with being a delinquent, and subsequently the juvenile court entered a true finding. The juvenile court awarded wardship of E.H. to the Department of Correction for a recommended one-year commitment. E.H. appeals this disposition.

DISCUSSION AND DECISION
Our standard of review for a challenge to the sufficiency of the evidence with respect to juvenile adjudications is well-settled. When reviewing claims of insufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Moran v. State, 622 N.E.2d 157, 158 (Ind.1993); C.S. v. State, 735 N.E.2d 273, 276 (Ind.Ct.App.2000), trans. denied (citing Fields v. State, 679 N.E.2d 898, 900 (Ind.1997)). Rather, we examine only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. C.S., 735 N.E.2d at 276. We will not disturb the adjudication if there exists substantive evidence of probative value to establish every material element of an offense beyond a reasonable doubt. Id.
E.H. argues that the evidence presented at trial by the State was insufficient to prove that he committed theft. Specifically, he contends that insufficient evidence was presented to establish criminal intent. We disagree. IC XX-XX-X-X(a) provides that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony."
Intent may be proved by circumstantial evidence. Johnson v. State, 593 N.E.2d 208, 209 (Ind.Ct.App.1992). Intent can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. Hart v. State, 671 N.E.2d 420, 426 (Ind.Ct.App.1996). The fact finder is entitled to infer intent from the surrounding circumstances. Id. at 427. Here, the State presented sufficient evidence for the fact finder to conclude beyond a reasonable doubt that E.H. committed theft. The court could have reasonably believed that when E.H. exerted unauthorized control over the necklace, he did so with the intent to steal the necklace. *684 The evidence presented at trial by the State's eye-witnesses clearly established that E.H. was the person who took the necklace from the gym. Further, testimony revealed that the necklace was found in E.H.'s locker inside a zipped jacket pocket and that E.H. provided an inconsistent story as to why the necklace was in his locker. The evidence leads to the reasonable inference that E.H. took the necklace from the gym and placed it in his locker because he intended to steal the necklace. It is the function of the trier of fact to resolve conflicts in testimony and to determine the weight of the evidence and the credibility of the witnesses. Jones v. State, 701 N.E.2d 863, 867 (Ind.Ct.App.1998). We decline E.H.'s invitation to do so.
E.H. next argues that the trial court abused it discretion by placing wardship over him with the Department of Correction for placement in a juvenile detention facility for a one-year term. Although acknowledging the juvenile court's discretion, E.H. contends that the court should have selected the least restrictive alternative. We agree.
The choice of a specific disposition of a juvenile adjudicated a delinquent child is within the sound discretion of the juvenile court, subject to the statutory considerations of the welfare of the child, the community's safety, and the Indiana Code's policy of favoring the least harsh disposition. A.M.R. v. State, 741 N.E.2d 727, 729 (Ind.Ct.App.2000); A.D. v. State, 736 N.E.2d 1274, 1275-76 (Ind.Ct.App. 2000) (citing IC XX-XX-XX-X). A juvenile disposition will not be reversed absent a showing of an abuse of discretion. A.D., 736 N.E.2d at 1276. An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Id.; Matter of L.J.M., 473 N.E.2d 637, 640 (Ind.Ct.App.1985).
Our supreme court has explained the nature of the juvenile justice system as follows:
The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a criminal. For this reason the statutory scheme of dealing with minors is vastly different than that directed to an adult who commits a crime. Juvenile judges have a variety of placement choices for juveniles who have delinquency problems, ranging from a private home in the community, a licensed foster home, a local juvenile detention center, to State institutions such as the Indiana Boys School and Indiana Girls School. None of these commitments are considered sentences. A child can become a juvenile delinquent by committing acts that would not be a violation of the law if committed by an adult, such as incorrigibility, refusal to attend public school, and running away from home. A child can also become a delinquent by committing acts that would be a crime if committed by an adult. In the juvenile area, no distinction is made between these two categories. When a juvenile is found to be delinquent, a program is attempted to deter him from going further in that direction in the hope that he can straighten out his life before the stigma of criminal conviction and the resultant detriment to society is realized. In contrast, when an adult is convicted of a crime, the conviction is a stigma that follows him through life, creating many roadblocks to rehabilitation. In addition to the general stigma of being an "ex-con," or a felon, the conviction subjects him to being found a habitual criminal if he later commits additional *685 felonies, and affects his credibility as a witness in future trials. The Legislature purposely designed the procedures of juvenile determinations so that these problems are not visited on those found to be juvenile delinquents in a juvenile court.
Jordan v. State, 512 N.E.2d 407, 408-09 (Ind.1987)
The statutory scheme for dealing with juveniles who commit crimes is vastly different from the statutory scheme for sentencing adults who commit crimes. In re G.B., 709 N.E.2d 352, 354 (Ind.Ct.App. 1999). "`American society [has] rejected treating juvenile law violators no differently from adult criminals in favor of individualized diagnosis and treatment.'" Id. (quoting State ex rel. Camden v. Gibson Circuit Court, 640 N.E.2d 696, 697 (Ind. 1994)). It is therefore the policy of this State to "`ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation....'" Id. (quoting IC XX-XX-X-X(5)).
IC XX-XX-XX-X specifically provides a list of factors that the juvenile court is to consider in entering a dispositional decree. The statute specifically provides that:
If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
(1) is:
(A) in the least restrictive (most family like) and most appropriate setting available; and
(B) close to the parents' home, consistent with the best interest and special needs of the child;
(2) least interferes with family autonomy;
(3) is least disruptive of family life;
(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.
Id.
Although we acknowledge that a juvenile court has wide latitude and great flexibility in dealing with juveniles, its goal is to rehabilitate rather than to punish. See Matter of L.J.M., 473 N.E.2d at 640. Turning to the facts of this case, we hold that the one-year commitment is punitive and does not further the rehabilitative goals of the juvenile justice system.
E.H. first became involved in the juvenile justice system in March 1999 after he took a handgun to school with the intent of using it upon himself because his home-life was intolerable. Both of his parents abused drugs and were unable to provide E.H. with a safe, stable, and nurturing environment. As a result of his suicidal tendencies and emotional troubles, E.H. spent ten months at Charter Hospital in 1999. He was placed on a suspended commitment for the offense. Upon his release from Charter, E.H. lived briefly with his aunt, but was moved from his aunt's house and placed in respite care apparently as the result of his mother continuing to abuse him. In March 2000, E.H. violated his suspended commitment due to "inappropriate behavior" caused by behavioral problems while in foster care. Appellant's Appendix at 40. E.H. was hospitalized at Community North for stabilization and medical check at this time. Several months later, E.H. was admitted to Community North for a second stabilization and medical evaluation. Throughout the remainder of 2000, E.H. was placed in several different foster care homes because of administrative problems, having *686 nothing to do with E.H.[2] Both of his parents remained resistant to reunification efforts and continued to abuse drugs and alcohol. By the time of the current offense, E.H. was again in a different foster home and was making significant improvement with adjustment issues. E.H. was also enrolled in the Dawn Project, a program assisting E.H. and his family with reunification, and was involved with home-based counseling. He was making considerable progress in both programs.
Here, the juvenile court had a placement alternative less restrictive than the one-year commitment to the Department of Correction: namely, continuing in foster care under the care of the Dawn Project. E.H.'s home-based counselor had found a foster home for E.H. and would monitor his progress on a weekly basis. Transcript at 54. The counselor further testified that E.H. had made considerable progress over the past year and that removing him from his current situation would cause him to regress in his treatment. Id. at 58.
The one-year commitment imposed by the juvenile court conflicts with the rehabilitative goals of the juvenile justice system. Other than it being the typical next step after a suspended commitment, the juvenile court provided no explanation for committing E.H. to the Department of Correction. E.H.'s involvement with the juvenile justice system is perhaps, in part, the result of his parents' abuse and neglect. Further, there is no evidence in the record before us that E.H. is a threat to the community. Given the nature of the offense and E.H.'s lack of a violent criminal record, it is not in his best interest or the community's best interest to commit him to Indiana Department of Correction for a period of one year. Our decision is consistent with the well-established policy of this State to "ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation." IC XX-XX-X-X(5). Least restrictive options existed at the time of the dispositional decree other than commitment to a public institution for a one-year term. Accordingly, we remand with instructions to the juvenile court to vacate its dispositional decree.
Adjudication affirmed; dispositional decree vacated.
SULLIVAN, J., concurs.
ROBB, J., concurs with separate opinion.
ROBB, Judge, concurring with opinion.
For the sake of clarity, I believe that it is necessary to address an additional concern with the dispositional decree. In the present case, the dispositional decree provides that:
The Court awards Wardship to the Indiana Department of Correction for housing in any correctional facility for children, and [E.H.] is detained pending transfer.
The Court as part of its disposition, recommends [E.H.] to be committed to Department of Correction for a period of 12 months.
Appellant's Appendix at 14. Under most circumstances, a trial court does not have the discretion to decree the length of time a juvenile is to be made a ward or committed to the Department of Correction; a trial court merely may make a recommendation. The Department of Correction has the ultimate authority to determine the *687 juvenile's length time in a correctional facility for children. Here, the trial court recommended that E.H. be made a ward or committed to the Department of Correction for a period of twelve (12) months. Although the trial court was free to make any recommendation it felt proper, the trial court does not have the authority to impose such a length of wardship or commitment.[3]
The record reveals that E.H. was fourteen years old when he committed the present delinquent act that would, if committed by an adult, be the crime of theft, a Class D felony.[4] When E.H. committed the present delinquent act, he already had one unrelated prior adjudication of delinquency for an act that would be a felony if committed by an adult, i.e., possession of a firearm on school property, a Class D felony.[5] Due to E.H.'s age, the delinquent act committed, and his prior juvenile record, Indiana Code section 31-37-19-6 is applicable. This statutory provision provides in pertinent part that:
(a) This section applies if a child is a delinquent child under IC 31-37-1.
(b) Except as provided in section 10 of this chapter, the juvenile court may:
(1) enter any dispositional decree specified in section 5 of this chapter; and
(2) take any of the following actions:
(A) Award wardship to:
(i) the department of correction for housing in a correctional facility for children; or
(ii) a community based correctional facility for children.
Wardship under this subdivision does not include the right to consent to the child's adoption.
(B) If the child is less than seventeen (17) years of age, order confinement in a juvenile detention facility for not more than the lesser of:
(i) ninety (90) days; or
(ii) the maximum term of imprisonment that could have been imposed on the child if the child had been convicted as an adult offender for the act that the child committed under IC 31-37-1 (or IC 31-6-4-1(b)(1) before its repeal).
Ind.Code § 31-37-19-6.
The presumptive sentence for theft, a Class D felony, is one and one-half (1½) years. Ind.Code § 35-50-2-7(a). Therefore, the maximum length of time E.H. could be made a ward or committed to the Department of Correction is ninety (90) days. See Ind.Code § 31-37-19-6(b)(2)(B). The trial court's recommendation to the Department of Correction exceeded the statutory time limit of wardship or commitment.
*688 Accordingly, I would remand with instructions to the juvenile court to vacate its dispositional decree.
NOTES
[1] See IC XX-XX-X-X.
[2] In December 2000, for instance, E.H. was removed from his foster care home because the home was not operating according to agency standards. A month later, E.H. was removed from another foster care home because the foster parent could not be licensed.
[3] I note that in certain circumstances, but not here due to the facts, the trial court may order wardship or commitment of the child to the Indiana Department of Correction for a fixed period. See Ind.Code § 31-37-19-9 to-10.
[4] Indiana Code section 35-43-4-2(a) provides in pertinent part that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony...."
[5] Indiana Code section 35-47-9-2 provides that:

A person who possesses a firearm:
(1) in or on school property;
(2) in or on property that is being used by a school for a school function; or
(3) on a school bus;
commits a Class D felony.