Timothy A. STEVENS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 64A04–0901–CR–8.

Court of Appeals of Indiana.

Sept. 10, 2009.

---

Lori L. Ferngren, Valparaiso, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, James E. Porter, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Timothy Stevens appeals his convictions for three counts of Aiding in Theft,[1] as class D felonies, and two counts of Bribery,[2] as class C felonies. Stevens presents two issues for our review, which we consolidate and restate as:

1. Is the evidence sufficient to sustain Stevens's convictions for aiding in theft and bribery?

2. Is there a fatal variance between the charging information and the evidence presented at trial with respect to Stevens's convictions for aiding in theft?

We affirm.

The facts favorable to the convictions follow. In the summer of 2006, Stevens

---

1. Ind.Code Ann. § 35–43–4–2 (West, PREMISE through Public Laws approved and effective through 4/20/2009); Ind.Code Ann. § 35–41–2–4 (West, PREMISE through Public Laws approved and effective through 4/20/2009).

2. Ind.Code Ann. § 35–44–1–1 (West, PREMISE through Public Laws approved and effective through 4/20/2009).

informed his uncle, Kenneth Campbell, and his cousin, Maranda Campbell (Kenneth's daughter), that he had thirteen American Express travelers checks that he needed to cash. Stevens explained that he did not have proper identification to cash the checks himself because his license had been confiscated when he tried to cash one of the checks at his own bank. Each travelers check was in the amount of $500. Stevens told Kenneth that he received the checks through an internet advertisement from a company purportedly located in the United Kingdom. Stevens kept the checks in a Fed–Ex envelope that was addressed to "Steve Timmons", a name Kenneth believed to be Stevens's alias. *Transcript* at 153.

Kenneth refused to cash the checks for Stevens, but Maranda agreed. Maranda suggested to Stevens that they cash the checks at Wal–Mart. Maranda had confirmed that Wal–Mart would cash a travelers check with a small purchase and she also knew how things operated because she once worked at Wal–Mart. For Maranda's help, Stevens agreed to give her $100 (minus amounts for purchases made) for each $500 check she cashed. Although Kenneth told Stevens that he would not help, he accompanied Maranda and Stevens each time they went to cash a check to ensure Maranda's safety. Kenneth remained in the vehicle while Stevens and Maranda went to cash the travelers checks. Kenneth received no money after the transaction was complete.

Stevens and Maranda went to several Wal–Mart stores, including three in Porter County. They used the same method each time they cashed a check. Stevens and Maranda would meet in the parking lot and discuss what item she would buy in order to cash the check. Stevens would hand a check to Maranda just as they entered the store. Maranda would make the purchase and receive cash for the remaining value of the check from the cashier. Stevens accompanied Maranda at all times and was near her as she checked out. Stevens and Maranda would then walk out together, and while in the parking lot, Maranda would give Stevens the cash she had received. Stevens would then pay Maranda her share. They would then leave in separate vehicles. Stevens and Maranda repeated this plan approximately every other day for a two- to three-week period. They spaced their visits so as not to draw attention to themselves for cashing so many checks. They also went to different Wal–Mart locations because "it just seemed more convenient to avoid the risk of being caught." *Id.* at 74. After one of the check-cashing episodes, Stevens purchased crack cocaine and shared it with Maranda and Kenneth.

Wal–Mart sent the travelers checks to the bank, and each check was dishonored and returned with a "counterfeit" stamp across the front. *Id.* at 23. Jerry Waggle, a Wal–Mart employee working in asset protection, testified that each time one of the $500 travelers checks was dishonored, Wal–Mart was "out the $500." *Id.* at 39. In other words, the items purchased and the cash paid to Maranda each time a travelers check was cashed and subsequently dishonored was a loss for Wal–Mart. After conducting its internal investigation, Wal–Mart submitted the information it had gathered to the police. The police investigation led to Maranda as the individual cashing the dishonored checks. Maranda was ultimately arrested, charged, and convicted of theft for her part in the check-cashing scheme.

While Maranda was serving her time in jail for her involvement, Stevens wrote her a letter and sent it to her grandmother's address. Maranda did not immediately receive the letter because she was incar-

cerated. The letter was passed from her father (Kenneth) to her brother, and finally to her mother. Before Maranda learned of the letter, she received another letter from Stevens.[3] Maranda was confused by the second letter until her mother informed her of some of the contents of the first letter sent by Stevens, at which time, "the pieces ... fell together" for Maranda. *Id.* at 82. The first letter, which is eight, hand-written pages, states in relevant part:

> Needless to say—or maybe it needs to be said: I recently got the State's discovery from our case here in Porter County. And I think this opportunity has now shifted from Ken to you. Call it eliminating the middle man, or whatever you want but I was stressing the importance to Ken on at least making you a little more comfortable is the least I/we can do so it's kind of like winning $1,000 lottery & I will personally deliver or send it to wherever you want but I assume "on your books" would be most helpful for commissary, etc. Like I said, there's a cash bond here a $2,000.00 cash bond in Lake Co. (in my name). I have to pay this money (along with a lot more) back to my dear friend who has been helping me. But then again, you also deserve a piece of the pie rather than these greedy worthless attorneys since you're doing the real suffering. . . .

> \* \* \*

> It's really pretty simple: 1) I was never with you at any Wal–Marts [it's not like you said I was, but I did] 2) You kept *all* money received 3) You thought they were authentic, "real"—and you did say that. Therefore, there's no knowing and willing intent.

I believe this is set for jury selection on 4/7 & trial on 4/9 so you can expect to be subpoenaed (or at least taken out that day). That is, unless you have any reservations. I would need to know so that we're in agreement. And there is no possibility of perjury charges or anything. After all, they already found several inconsistencies in your statement but cannot prosecute.

> \* \* \*

> One other thing. You were given those (or took or stole) from Ken. Maybe he was looking for work on the internet too or found them or whatever. There's no crime there—no criminal intent in just having possession of them. It makes logical sense to me, for example, that Ken got them off the internet . . .

> \* \* \*

> And I would not just leave you thrown out to the wolves which is how it seems, ain't it? I just wish that you would have contacted me when the cops first got ahold [sic] of you & we could have approached this whole thing differently— and possibly avoided convictions. A guy told me months ago that it would be a mistake to work against each other because nobody wins (except maybe the State, but not really) & ultimately, like Ken was saying, the real criminals remain free!

> So now what I'm trying to do is "paint a picture" of me having decided to take the fall for my terminally-ill uncle in an attempt to keep him in a position to care for his elderly, dependent mother. . . .

---

**3.** Stevens sent this same letter through the same channels as he did the first. The second letter, however, was received by Maranda's grandmother, who then forwarded the letter to Maranda while she was incarcerated.

*State's Exhibit* 5a. After being informed of this letter, Maranda contacted the police because she believed Stevens was trying to implicate Kenneth. The second letter Maranda received instructed her to contact one of Stevens's friends who would tell her what to say at Stevens's trial. Maranda, however, never contacted Stevens's friend. Maranda received nothing from the State in exchange for her testimony in Stevens's trial.

Kenneth also received a letter from Stevens. In this letter, Stevens discussed Maranda's testimony. Stevens wrote:

> Honestly, I have no idea why your daughter admitted to suspecting the money orders were no good. Except, of course, perhaps her representation. That's why I had her set to be a witness for trial—which was supposed to be next week. First of all, as an incentive to recant part of her testimony (because she already plead [sic] guilty and was sentenced) I offered her $1,000 which is of the $1500 cash bond here [and $2000 in Lake Co]. Even though I have to pay back my friend this money, like I told her, I'd rather pay her—or you—than an attorney! The upshot is an acquittal & the downside is the time served [at 5 months now] with no bond. Needless to say, I'll pay you the same—and I'm negotiable if more is expected for your testimony because, frankly, now that the dates were changed whenever I go back in, say, 2–6 weeks & the State offers me a 6–month time served plea—and I have no witnesses—then I really have no choice but to accept. Anyway, I had sent [Maranda] an 8–page letter months ago and basically said that if I heard nothing I'd assume she was in agreement.

*State's Exhibit* 9 at 3–4. Stevens continued to address the charges pending

against him. Near the end of the letter, Stevens stated, "But I would need you man" and indicated that there would be "another opportunity" because he needed Kenneth's help in a pending criminal case in Lake County. *Id.* at 7. Although Kenneth was confused by the letter, he ultimately concluded that Stevens was trying to tell him how to testify.

On March 28, 2007, the State charged Stevens by information.[4] On May 19, 2008, the State filed its third amended information charging Stevens with three counts of class D felony aiding in theft (Counts I, II, and III) and two counts of bribery (Counts IV and V). A jury trial was held on August 28, 2008, at the conclusion of which the jury found Stevens guilty as charged. At a December 2, 2008 sentencing hearing, the trial court sentenced Stevens to two years on each of Counts I, II, and III, four years on Count IV, and six years on Count V. The trial court ordered the sentences on the three counts of aiding in theft and the sentence on Count IV be served concurrently. The court ordered the sentence on Count V to be served consecutive to the others, for a total aggregate sentence of ten years.

1.

Stevens argues that the evidence is insufficient to sustain his convictions for aiding in theft and for bribery. When considering a challenge to the sufficiency of evidence to support a conviction, we respect the fact-finder's exclusive province to weigh the evidence and therefore neither reweigh the evidence nor judge witness credibility. *McHenry v. State*, 820 N.E.2d 124 (Ind.2005). We consider only the probative evidence and reasonable inferences supporting the conviction, and "must affirm 'if the probative evidence and reasonable inferences drawn from the evi-

---

**4.** The initial charging information is not in- cluded in the record on appeal.

dence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'" *Id.* at 126 (*quoting Tobar v. State,* 740 N.E.2d 109, 111–12 (Ind.2000)).

■ To convict Stevens of aiding in theft, the State was required to prove beyond a reasonable doubt that Stevens, on three separate dates, "did knowingly or intentionally aid Maranda Campbell exert unauthorized control over the property of another person with the intent to deprive the other person of any part of the property's value or use...." *Appendix* at 15. *See also* I.C. § 35–43–4–2 and I.C. § 35–41–2–4. Stevens first argues that the State failed to prove that Wal–Mart suffered any loss of property or United States Currency.

With regard to evidence of property loss, Maranda testified that she went to the Wal–Mart in Portage on two occasions and the Wal–Mart in Valparaiso on one occasion, presented a travelers check given to her by Stevens on each occasion, purchased either a carton of cigarettes or minutes for her cell phone, and received cash for the remaining value of the travelers check. The evidence further established that the checks presented by Maranda to the different Wal–Mart stores were subsequently dishonored by the bank and stamped as "counterfeit." *State's Exhibits* 1, 2A, and 4. Jerry Waggle, an asset protection employee with six years of experience, testified that when a check is dishonored, the money involved in the transaction is a "loss of that money" for Wal–Mart. *Transcript* at 44. Waggle testified as to his direct involvement with two dishonored travelers checks in Maranda's name that were presented at the Wal–Mart store in Portage. Waggle also testified that he was informed that a similar incident occurred at the Wal–Mart store in Valparaiso, i.e., a $500 travelers check was presented to the store and subsequently dishonored. Maranda identified *State's Exhibit* 4 as the $500 travelers check she presented to the Wal–Mart in Valparaiso. This travelers check was subsequently dishonored by the bank. From this evidence, the jury could have reasonably concluded that Wal–Mart suffered a loss of property or U.S. Currency each time Maranda presented Wal–Mart with a travelers check, given to her by Stevens, that was subsequently dishonored by the bank.

■ Stevens also argues that the State failed to establish that he had the necessary intent to steal from Wal–Mart. To be found guilty, the State was required to prove Stevens "knowingly or intentionally" aided in the unauthorized control over Wal–Mart's property and that he had the intent to deprive Wal–Mart of the property's value or use. *See* I.C. § 35–43–4–2.

"A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35–41–2–2(a) (West, PREMISE through Public Laws approved and effective through 4/20/2009). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35–41–2–2(b). "'Intent can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points.'" *Hightower v. State,* 866 N.E.2d 356, 368 (Ind.Ct.App. 2007) (quoting *E.H. v. State,* 764 N.E.2d 681, 683 (Ind.Ct.App.2002), *trans. denied*), *trans. denied.* The trier of fact may infer intent from the surrounding circumstances. *Hightower v. State,* 866 N.E.2d 356. Intent is a mental function that, absent a confession, is often proved by circumstantial evidence. *Id.*

Here, Stevens told the police that he believed the travelers checks were fraudulent. Stevens also told Kenneth that he

had tried to cash one of the travelers checks at his bank, but his bank refused to cash the check, and instead kept the check and his identification. Also, Stevens had become involved with an internet scam in which he agreed to deposit a check into his bank account, send the majority of the money from the check to the senders, and keep the balance. The check, valued at around $4,000, was dishonored and Stevens's bank charged him for the loss. Stevens obtained the travelers checks at issue in an attempt to recoup his money.

Furthermore, Stevens told police that he started using Wal–Mart stores to cash the checks because he wanted to "avoid the bank" so the travelers checks could not be traced back to him. *State's Exhibit* 11 at 4. Stevens and Maranda also decided to space their visits and to go to various Wal–Mart stores to avoid drawing attention to themselves for cashing so many checks because, according to Maranda, "it just seemed more convenient to avoid the risk of being caught." *Transcript* at 74. Maranda testified that Stevens would provide her with the check just as they entered the store and that Stevens stayed with her at all times. Upon exiting the store, Maranda would give Stevens the cash she received as change and he would give her her share of the money. Stevens's intent and knowledge that the travelers checks would not be honored when presented to the bank can be inferred from his past experience in attempting to cash a similar check and from his conduct during the instant offenses. Indeed, from the evidence, the jury could have reasonably concluded that Stevens knowingly and intentionally aided Maranda in exerting unauthorized control over Wal–Mart's property and that he had the intent to deprive Wal–Mart of the property's value or use.

■ Stevens also challenges the evidence in support of both of his convictions for bribery. To convict Stevens of bribery, the State was required to prove beyond a reasonable doubt that Stevens "did confer, offer, or agree to confer any property on a witness, to-wit: Maranda Campbell [ (Count IV)/Kenneth Campbell (Count5) ], with intent that the witness withhold any testimony, information, document or thing...." *Appendix* at 16. *See also* I.C. § 35–44–1–1(A)(8)(A).

Stevens asserts that to sustain a conviction for bribery, the State was required to prove that there was a communication between the person making the offer or proposal and receipt of the communication by the intended recipient. Here, Stevens sent a letter address to "Baby Cakes"—his nickname for Maranda—at her grandmother's home. The letter was received by Maranda's father and ultimately ended up in the hands of Maranda's mother. In the meantime, Maranda received a second letter from Stevens while incarcerated. Maranda found the letter confusing because at the time she did not know about the first letter. Maranda's mother informed her of the contents of the first letter, including Stevens's suggestion that Maranda's father (Kenneth) had a role in the crimes. Maranda contacted a detective and informed him of the first letter Stevens had sent her. The detective retrieved the letter from Maranda's mother. Maranda did not see the actual letter Stevens had sent her until just before trial. Thus, Stevens argues that his conviction under Count IV must be reversed because the State failed to produce any evidence that a bribe was actually communicated to Maranda.

There are no Indiana cases that address whether an offer of a bribe must be received. We begin by noting that the statute focuses on the conduct of the individual

making the offer or proposal and not on the intended recipient. The statute defining the crime of bribery, as pertinent to this case, requires only that the defendant "confer, offer, or agree." The term "offer" is defined as "to present for acceptance or rejection." Merriam Webster's Online Dictionary, *available at* http://www. merriam-webster.com/dictionary/offer (last visited on August 20, 2009). The plain meaning of the word "offer" leads to the conclusion that Stevens only had to present the bribe to establish this element of the offense. Stevens did in fact present his offer for acceptance or rejection when he addressed the letter to Maranda and sent it through channels reasonably calculated to reach her.[5] It appears Stevens did all that he could do in terms of presenting his offer to Maranda. The evidence is sufficient to establish that Stevens offered a bribe to Maranda, despite the fact that she did not actually see the letter containing the offer until just before trial.

■ Stevens also argues that his conviction for bribery under Count V (bribery of Kenneth) must be reversed because there was insufficient evidence of communication of his offer to Kenneth. Stevens directs us to Kenneth's testimony that Kenneth was confused by the letter and did not understand what Stevens was trying to say. Stevens, however, does not dispute that Kenneth received his letter. As we noted above, the statute focuses on the conduct of the person making the offer, not the intended recipient. Here, Stevens wrote a letter to Kenneth containing the offer and presented it to him for acceptance or rejection. Stevens's conduct satisfies this element of the statute defining the offense of bribery.

■ Stevens also argues that his convictions for bribery must be reversed because the State failed to allege in the charging instrument and its evidence did not establish that he offered anything of a certain and distinct value to either Maranda or Kenneth.

As we stated above, to convict Stevens of bribery as charged, the State was required to prove beyond a reasonable doubt, that Stevens "did confer, offer, or agree to confer any *property* on a witness, to-wit: Maranda Campbell [ (Count IV)/Kenneth Campbell (Count 5) ], with intent that the witness withhold any testimony, information, document or thing...." *Appendix* at 16 (emphasis supplied); *see* I.C. § 35–44–1–1(A)(8)(A).

In support of his argument that the charging information was deficient, Stevens relies on two cases from the 19th century. In both cases, the Supreme Court affirmed the dismissal of indictments for bribery finding the indictments insufficient in terms of alleging that anything of specific value was received or offered. *See State v. Walls*, 54 Ind. 561 (1876) (finding a promissory note payable in the name of public officer so bribed could not be considered as having any real value as it was a promise to be paid) and *State v. Stephenson*, 83 Ind. 246, 248 (1882) (finding that an offer of "a present, or a present of one hundred dollars" was uncertain as to what was intended to be offered and as to what the person to be bribed had reason to expect).

■ Generally, a challenge to the sufficiency of an information must be made by a motion to dismiss prior to arraignment. *Townsend v. State*, 632 N.E.2d 727 (Ind. 1994). Failure to assert error in an indict-

---

**5.** Steven addressed his letter to Maranda and sent it to Maranda's grandmother's home with the expectation that Maranda's grandmother would forward the letter to Maranda. Indeed, this is precisely how the second letter sent by Stevens reached Maranda.

ment or information results in waiver of that error. *Id.; Buzzard v. State*, 712 N.E.2d 547 (Ind.Ct.App.1999), *trans. denied.* Here, Stevens did not challenge the sufficiency of the charging instrument prior to trial. He has therefore waived any error in this regard.

■ With regard to the evidence presented at trial, we consider the letters Stevens sent to Maranda and Kenneth. In his letter to Maranda, Stevens referenced a $1500 cash bond and a $2000 cash bond and wrote of "making [Maranda] a little more comfortable ... so it's kind of like winning $1,000 lottery & I will personally deliver or send it to wherever you want." *State's Exhibit* 5a. He proceeded to inform Maranda of what her testimony should be and asked if she was in agreement. In his letter to Kenneth, Stevens referenced his proposed testimony for Maranda and continued, writing, "as an incentive to recant part of her testimony (because she already plead guilty and was sentenced) I offered [Maranda] $1,000 which is of the $1500 cash bond here [and $2000 in Lake Co].... Needless to say, I'll pay you the same—and I'm negotiable if more is expected for your testimony...." *State's Exhibit* 9.

The instant case is distinguishable from the 19th-century cases cited by Stevens. Here, the probative evidence and reasonable inferences favorable to the verdict reveal that Stevens offered Maranda and Kenneth $1000 for their testimony that he was not implicated in the instant crimes. Stevens provided Maranda with detailed instructions as to how she should testify,

specifically, that she was to implicate only herself and her father. Stevens offered Maranda $1000 for her testimony. Stevens made the same offer to Kenneth, but noted that he was "negotiable" if Kenneth expected more for his testimony. *State's Exhibit* 9. The State's evidence sufficiently proves that Stevens offered property of a certain and distinct value, i.e., $1000 cash. Having rejected Stevens's challenges, we conclude the evidence is sufficient to support Stevens's convictions for bribery.

2.

■ Stevens argues that his convictions for aiding in theft must be reversed because of a fatal variance. During preliminary instructions, the trial court informed the jury that Stevens was charged with three counts of aiding in theft, "to wit: [using] a *counterfeit* travelers check to obtain property and United States Currency from Wal–Mart ..." on three separate dates (Counts I, II, and III). *Appendix* at 25 (emphasis supplied). This language for the preliminary instruction came directly from the charging instrument.[6] At the conclusion of the evidence, the State sought to amend the final instruction defining the crime as charged to replace the word "counterfeit" with the word "dishonored." Over Stevens's objection, the trial court agreed, finding that there was no evidence establishing the counterfeit nature of the travelers check. Essentially, the court amended the charging information to conform to the evidence by substituting the word dishonored for counterfeit. The court instructed the jury accordingly in the court's final instructions. It is this

---

**6.** The charging information for Count I, aiding in theft, provides, in pertinent part, as follows:

That on or about July 24, 2006, in the County of Porter, State of Indiana, Timothy A. Stevens, did knowingly or intentionally aid Maranda Campbell exert unauthorized control over the property of another person with the intent to deprive the other person

of any part of the property's value or use, to-wit: used a counterfeit travelers check o obtain property and United States Currency from Wal–Mart....

*Appendix* at 15. The charging information for Counts II and III are verbatim of Count I, with the exception of the date on which the offense was alleged to have been committed.

amendment to the charging information and final instructions Stevens's claims to be a fatal variance with the facts.

 Stevens's argument is confusing, at best. A variance is an essential difference between proof and pleading. *Childers v. State*, 813 N.E.2d 432 (Ind.Ct.App.2004). Stevens's argument, however, is not that there was a difference in the proof and pleading. His argument stems from the trial court's replacement of the word "counterfeit" in the preliminary instruction (*Appendix* at 25–26) defining the charges of aiding in theft, with the word "dishonored" in the final instruction defining the crime. *Appendix* at 36–37. At trial, there was substantial evidence that the travelers checks presented by Maranda to Wal-Mart were dishonored. There is thus no variance between proof and pleading. Stevens does not otherwise challenge the trial court's authority to amend the charging information to conform to the evidence.

Judgment affirmed.

BAKER, C.J., and RILEY, J., concur.