## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 16 2017, 6:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

J.R.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

February 16, 2017

Court of Appeals Case No.
49A05-1608-JV-1858

Appeal from the Marion Superior Court

The Honorable Scott B. Stowers, Magistrate

Trial Court Cause No.
49D09-1601-JD-101

**Crone, Judge.**

# Case Summary

Thirteen-year-old J.R. challenges the sufficiency of the evidence to support his true finding for conduct that would constitute class A misdemeanor resisting law enforcement if committed by an adult. We affirm.

# Facts and Procedural History

The facts most favorable to the delinquency adjudication are as follows. On January 7, 2016, Sergeant Thomas McClendon was on duty at a middle school as an Indianapolis Public School officer. Around lunchtime, the school's custodian told the sergeant that he had heard banging and crashing in the boys' restroom. The Sergeant observed two boys running out of the restroom, and he stopped them and told them that they must accompany him to see the dean. One of the boys cooperated and followed. The other, J.R., "kept walking away," "turning around," "moving this way and that way," and not following. Tr. at 10. The dean was in the crowded cafeteria at the time, and the sergeant delivered the cooperative boy to her, apprised her of the situation, and informed her that J.R. was involved in the incident but had not cooperated in following him into the cafeteria.

Meanwhile, J.R. had entered the cafeteria and hidden under a table full of students. The students began pointing underneath the table to signal the dean and sergeant as to J.R.'s whereabouts. When the dean asked for help, Sergeant McClendon approached the table, cleared the students seated there, told J.R. that he was not under arrest, and instructed him to come out from under the

table. J.R. refused and "cussed [him] out." *Id*. at 12. When the sergeant attempted to grip J.R.'s arm, J.R. snatched it away. The situation "escalated," and Public School Officer Jack Mertes,[1] who was on duty in the cafeteria, approached to provide assistance. *Id*. at 24. The two officers continued to try to get a grip on J.R.'s arms, and he continued to resist. A third officer, also on duty in the cafeteria, offered assistance. The three officers attempted to retrieve J.R. from under the table, and J.R.'s twists and turns of his arms became "quicker" and "violent," "strong enough to yank [the officers] out of [their] stances." *Id*. at 15. All three officers fell. Officer Mertes appeared to have injured his wrist and knee.

[4] Sergeant McClendon arrested J.R. for resisting law enforcement and disorderly conduct. The State charged J.R. with conduct amounting to level 6 felony resisting law enforcement with bodily injury if committed by an adult. After a hearing, the trial court noted that Officer Mertes had not been present to testify concerning his alleged bodily injury and entered a true finding of conduct amounting to class A misdemeanor resisting law enforcement if committed by an adult. The trial court placed J.R. on probation and remanded him to his mother's custody.

[5] J.R. now appeals. Additional facts will be provided as necessary.

---

[1] The record contains several different spellings of Officer Mertes's name. We have chosen the spelling as it appears in the probable cause affidavit and juvenile delinquency petition. Appellant's App. at 15, 17.

# Discussion and Decision

[6] J.R. challenges the sufficiency of the evidence to support his delinquency adjudication. When reviewing a claim of insufficient evidence to support juvenile delinquency adjudications, we neither reweigh evidence nor reassess witness credibility. *D.W. v. State*, 903 N.E.2d 966, 968 (Ind. Ct. App. 2009), *trans. denied*. Rather, we look only to the probative evidence and reasonable inferences supporting the adjudication to determine whether a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt. *Id*. The uncorroborated testimony of one witness may be sufficient by itself to sustain an adjudication of delinquency. *Id*.

[7] The trial court entered a true finding against J.R. for class A misdemeanor resisting law enforcement. "A person who knowingly or intentionally … forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties … commits resisting law enforcement, a Class A misdemeanor." Ind. Code § 35-44.1-3-1(a)(1).

[8] J.R. maintains that the evidence was insufficient to establish criminal intent.[2] "A person engages in conduct 'intentionally' if, when he engages in the

---

[2] J.R. asserts that he suffers from mental illness and a learning disability and therefore was incapable of forming the requisite criminal intent. Contrary to J.R.'s suggestion that it is a claim of insufficient evidence, this is more accurately characterized as a claim of diminished mental capacity, which he did not raise before the trial court. As such, he has waived it for consideration on appeal. *See B.R. v. State*, 823 N.E.2d 301, 306 (Ind. Ct. App. 2005) (issue that is raised for first time on appeal of juvenile delinquency adjudication is waived).

conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Intent may be proved by circumstantial evidence. *E.H. v. State*, 764 N.E.2d 681, 683 (Ind. Ct. App. 2002). The factfinder may draw reasonable inferences concerning the juvenile's intent based on the juvenile's "conduct and the natural and usual sequence to which such conduct logically and reasonably points." *Id.*

[9] Here, the record shows that the three officers were lawfully engaged in the execution of their duties as Indianapolis Public School Officers at the time of the offense, and J.R. does not dispute this. Sergeant McClendon testified at length concerning J.R.'s uncooperative responses to his orders. For example, when the sergeant commanded him to accompany him to see the dean, J.R. "kept walking away," "turning around," "moving this way and that way," and not following. Tr. at 10. By the time the sergeant and cooperative student reached the dean, who was in the cafeteria, J.R. had disappeared. J.R.'s conduct in hiding under a cafeteria table and not coming out from beneath it when first ordered to do so supports a reasonable inference of knowing disobedience of the sergeant's orders. J.R. correctly observes that as of that time, he had been advised that the matter was disciplinary as opposed to criminal. However, Sergeant McClendon testified that when J.R. refused to come out from under the table, cussed him out, and yanked his arm away, the incident "escalated," requiring assistance from two other officers on duty. *Id.* at

24. Even the three officers could not easily subdue thirteen-year-old J.R., whose movements had become "quicker" and "violent," with J.R. eventually yanking all three officers off their feet. *Id*. at 15. Simply put, the incident escalated from a disciplinary matter to a criminal matter based on the escalation of J.R.'s own conduct. The evidence most favorable to the delinquency adjudication supports a reasonable inference that J.R. knowingly and forcibly resisted, obstructed, or interfered with the law enforcement officers in the lawful execution of their duties. Accordingly, we affirm.

[10] Affirmed.

Riley, J., and Altice, J., concur.