## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 26 2019, 8:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michelle Laux
St. Joseph County Public Defender's Office
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.S.,<br>*Appellant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee*. | November 26, 2019<br><br>Court of Appeals Case No.<br>19A-JV-1537<br><br>Appeal from the St. Joseph Probate Court<br><br>The Honorable Jason Cichowicz, Judge<br><br>The Honorable Graham Polando, Magistrate<br><br>Trial Court Cause No.<br>71J01-1904-JD-140 |

**Brown, Judge.**

[1] T.S. appeals the juvenile court's dispositional order awarding wardship of him to the Department of Correction ("DOC"). We affirm.

*Facts and Procedural History*

[2] On April 23, 2019, T.S., who was born on June 17, 2003, was riding in a car with other people. At some point, someone in the car indicated they were being followed by a police car. The car stopped, and T.S. and everyone else "bailed" out of the car. Transcript Volume II at 27. As he ran away, a police officer told T.S. to stop, and T.S. continued running.

[3] On April 24, 2019, the court held a detention hearing. Sandra DeHaven, T.S.'s probation officer, indicated he had been placed on formal probation in 2015, was released from formal probation on March 20, 2019, had been placed at Bashor Home from November 20, 2017 to December 18, 2018, and received services from Oaklawn, Dockside, and Keys Counseling "[s]o probation has given this family an array of services prior to him being discharged from probation." *Id.* at 5. She also stated he was suspended from school on April 11, 2019 for excessive tardies and loitering in the school halls. She recommended that he be detained in secure custody.

[4] T.S.'s counsel indicated T.S. had successfully completed his term of probation and his mother was willing to have him home. The court asked T.S.'s mother if she was willing to have him stay with her in her home, and she answered: "Yes, if [T.S.] is going to do what [he] is supposed to do, yes. But if [he] is not going

to do, no." *Id.* at 10. The court stated it was "abundantly clear" that T.S. would not follow the rules if he was placed at home, noted that it had just discharged him a little more than thirty days earlier from probation, and placed him in secure custody. *Id.* at 11.

[5] On April 30, 2019, the State filed a delinquency petition alleging that T.S. committed resisting law enforcement which would constitute a class A misdemeanor if committed by an adult. On May 8, 2019, the court held a status hearing, and T.S. admitted the allegation. The court stated that if T.S. was released he "will be right back here very soon" and that "[t]here's simply too many referrals, too many violations." *Id.* at 33. The court found that detention was necessary to protect T.S. and the community.

[6] In a pre-dispositional report dated June 10, 2019, Probation Officer Dustin D. Jesch detailed T.S.'s legal history and recommended wardship be given to the DOC.

[7] On June 11, 2019, the court held a dispositional hearing. T.S.'s counsel argued that he had been accepted to the day-reporting program in spite of his apparent gang ties. T.S. stated:

> I'd like to say I'm sorry for what I did to get in here. What I did back in the detention. Whatever happened, I was planning to make the best of it, whether it's DOC, I'd try to get my GED while I'm in there. If I was to go home, sometime soon, I should really get a job. Something to keep myself busy, like, I had never been in this day reporting thing but it seems like it's something that, you know, have me something to do. So I just wanted to

say, whatever happens, I'm looking forward to making something out of it.

*Id.* at 42.

[8] The court stated:

> [T.S.], I note that you accepted responsibility in this cause and you received no benefit for that acceptance. That is a significant, substantial point in your favor.
>
> Unfortunately, it is the only significant, substantial point in your favor. I find your statement of remorse to be incredible. And I find that your behavior here is of a piece with the profoundly anti-social behavior you have shown for a very, very, very long time.
>
> I agree with everything Mr. Jes[c]h wrote. I agree with his conclusions. I particularly agree with his statement that to believe that [T.S.'s] behavior will change toward authority is nonsensical. Anything less restrictive than what's being proposed here, including day reporting, is flatly inconsistent with the safety of the community.
>
> So the probation department's recommendation should be adopted. [T.S.] [is] made a ward of the Department of Correction.

*Id.* at 42-43.

[9] On June 11, 2019, the court entered a dispositional order adopting the statements and attachments in the probation officer's report and awarded wardship of T.S. to the DOC.

## *Discussion*

[10] T.S. argues that the juvenile court abused its discretion when it committed him to the DOC. He also argues that the court erred by ordering him to be committed to the DOC for an indefinite period and asserts that "[i]t is more than likely that it will be for a period greater than ninety (90) days, clearly contrary to Ind. Code § 31-37-19-6." Appellant's Brief at 9 (italics omitted). The State argues that the juvenile court did not abuse its discretion by committing T.S. to the DOC because other least restrictive means of rehabilitation had previously been attempted without success.

[11] The juvenile court is given wide latitude and great flexibility in determining the disposition of a delinquent child. *D.A. v. State*, 967 N.E.2d 59, 65 (Ind. Ct. App. 2012). However, its discretion is circumscribed by Ind. Code § 31-37-18-6, which provides that, "[i]f consistent with the safety of the community and the best interest of the child," the juvenile court shall enter a dispositional decree that is "in the least restrictive (most family like) and most appropriate setting available" and "close to the parents' home, consistent with the best interest and special needs of the child"; least interferes with family autonomy; is least disruptive of family life; imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and provides a reasonable opportunity for participation by the child's parent, guardian, or custodian. Under the statute, placement in the least restrictive and most appropriate setting available applies only "[i]f consistent with the safety of the community and the best interest of the child." *J.D. v. State*, 859 N.E.2d 341, 346 (Ind. 2007) (citing

Ind. Code § 31-37-18-6). We will not overturn the juvenile court's disposition order absent an abuse of discretion. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010).

[12] The record reveals that the pre-dispositional report indicates T.S. tested positive for marijuana on April 24, 2019. Prior services included "Keys Counseling tutoring, therapy and case management; Dockside Services COSAT assessment and other services; detention services; home detention services; residential treatment services, parent education, and parent substance abuse treatment." Appellant's Appendix Volume II at 71-72. The report indicates that, since his detainment on April 24, 2019, T.S. received approximately nine incident reports for defiance, threats, and disrespect to staff and that on June 7, 2019, he "and two other residents got into a major altercation requiring the use of OC-10 by detention staff to control the situation." *Id.* at 71.

[13] The report details T.S.'s lengthy legal history, which includes allegations of burglary and multiple batteries resulting in bodily injury. It summarizes T.S.'s history as follows:

> A lengthy history of delinquency characterizes [T.S.'s] life from 2014 to the present. While not every incidence of delinquency has been brought to the Court's attention, including fights and defiance at school, at only 15 years old, [T.S.] has nine delinquency referrals to the probation department, four of which have resulted in an adjudication. A consistent pattern has emerged when one researches his background: [T.S.] often feels that rules and laws do not apply to him. Whether he is stealing fireworks, giving a child a bloody nose, running from law enforcement, or stealing someone's money, [T.S.] is

demonstrating that he is both impulsive and willing to defy most conventional societal norms. In school settings at both Bashor and in the South [Bend] Community School Corporation, [T.S.'s] penchant for rule-breaking is obvious and often severe. Documents indicate that he is not simply being redirected for talking. [T.S.] often escalates a situation in which he feels aggrieved, and the result is often a suspension and potentially a probation violation.

[T.S.] is a 15 year old male appearing before the Court for disposition for Resisting Law Enforcement, a Class A Misdemeanor when committed by an adult. [T.S.] scored high on the Indiana Youth Assessment System indicating there is a high probability that he will commit another delinquent act. The drivers of his behavior are anti-social cognition and anti-social peers. [T.S.] may state he does not associate with gang members or that he is not influenced by others, but the evidence of gang activity on Facebook is obvious and was posted after he was released from Bashor. To further complicate things, [T.S.'s mother's] page also shows an affinity for a local gang. To believe that [T.S.'s] behavior will change in a permissive family environment with a parent who, at a minimum, shows acceptance of gang activity, and to believe that [T.S.'s] behavior will change toward authority is nonsensical. Significant intervention must take place to prevent this young man from continuing down a path that will lead to a lack of educational attainment and more criminal behavior.

Dispositional Options Considered and Evaluation of Each: Probation in the community has been tried several times and has only led to more probation violations. Relative care is not an option because it will not prevent [T.S.] from disregarding house rules and doing as he pleases. Out of home placement has also been tried, but soon after his release [T.S.] reverted to his old behavior. Commitment to a correctional [sic] is the only option that will provide the structure and discipline that [T.S.] desperately needs.

*Id.* at 72.  The report recommends that T.S. be awarded to the care and custody of the DOC for placement at an appropriately facility.

[14]     Based upon the record, and in light of T.S.'s delinquent behavior and failure to adequately respond to prior attempts at rehabilitation, we conclude that the placement ordered by the juvenile court is consistent with his best interest and the safety of the community and find no abuse of discretion.  *See D.E. v. State*, 962 N.E.2d 94, 97 (Ind. Ct. App. 2011) (holding the juvenile court did not abuse its discretion in placing D.E. in a DOC facility even though there was a less restrictive option available where earlier attempts to rehabilitate his behavior were unsuccessful).[1]

[15]     With respect to T.S.'s citation of Ind. Code § 31-37-19-6, that statute provides that "the juvenile court may . . . [a]ward wardship to . . . the department of correction for housing in a *correctional* facility for children . . . ."  Ind. Code § 31-37-19-6(b)(2)(A)(i) (emphasis added).  It also provides that "the juvenile court may . . . take any of the following actions . . . [i]f the child is less than seventeen (17) years of age, order confinement in a juvenile *detention* facility for not more than the lesser of: (i) ninety (90) days; or (ii) the maximum term of imprisonment that could have been imposed on the child if the child had been

---

[1] To the extent T.S. cites *E.H. v. State*, 764 N.E.2d 681 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*, we find that case distinguishable.  E.H. was involved in home-based counseling and was making considerable progress.  764 N.E.2d at 686.  E.H.'s home-based counselor testified that removing him from his current situation would cause him to regress in his treatment.  *Id.*  Further, E.H. lacked a violent criminal record and there was no evidence that E.H. was a threat to the community.  *Id.*

convicted as an adult offender for the act that the child committed under IC 31-37-1 (or IC 31-6-4-1(b)(1) before its repeal)." Ind. Code § 31-37-19-6(b)(2)(B) (emphasis added). T.S. appears to focus his argument on the commitment to the DOC and not to any earlier detention period. The Indiana Supreme Court has held that Ind. Code § 31-37-19-6 "provides for, among other things, an indeterminate commitment of a delinquent child," that "[o]ne option for the trial court under section 6 is to award wardship of the child to the DOC," and that "[i]n that case, the DOC determines both the placement of the juvenile and the duration of the placement." *D.C. v. State*, 958 N.E.2d 757, 759 (Ind. 2011). We cannot say that reversal is warranted on this basis.

[16] For the foregoing reasons, we affirm the juvenile court.

[17] Affirmed.

Baker, J., and Riley, J., concur.