774 N.E.2d 554 (2002)
L.L., Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 49A05-0204-JV-157.
Court of Appeals of Indiana.
September 5, 2002.
Rehearing Denied October 10, 2002.
*555 Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
ROBB, Judge.
Fifteen-year-old L.L. committed three probation violations in one month and entered a plea agreement admitting two of the violations. The juvenile court placed L.L. with the Indiana Department of Correction for six months. L.L. now appeals his placement. We affirm.

Issue
L.L. raises a single issue for our review, which we restate as whether the juvenile court abused its discretion in placing L.L. in the Department of Correction for six months when a less restrictive alternative placement was available.

Facts and Procedural History
During the summer of 2001, L.L. was in foster care with Michael and Benita Jones. On July 12, 2001, he drove the Joneses' car without permission. The State filed a delinquency petition against L.L., alleging *556 that he committed the misdemeanor offense of conversion. He admitted the offense and the juvenile court placed him on probation.
In October 2001, the probation department filed a violation against L.L., alleging that he had run away from his foster parents. On October 23, 2001, the juvenile court ordered commitment to the Department of Correction, but suspended the commitment and ordered that L.L. be placed in a group home. While in the group home, he maintained regular contact with the Joneses.
In February 2002, L.L. again took the Joneses' car without permission. The probation department filed a violation of probation for this offense and also filed a separate violation because L.L. had been suspended from school on two occasions in February 2002. L.L. admitted having twice been suspended from school and the State dismissed the violation concerning the Joneses' car. The juvenile court held a disposition hearing, at which L.L. argued that he should be returned to the group home as his placement there had been largely successful. The guardian ad litem agreed, stating that such a placement would allow him to continue attending school and continue in the adoption process with the Joneses. The probation department, however, recommended commitment to the Department of Correction.
The juvenile court committed L.L. to the Department of Correction for six months. This appeal ensued.

Discussion and Decision

I. Standard of Review
The choice of a specific disposition for a juvenile adjudicated to be a delinquent is within the discretion of the juvenile court, subject to the statutory considerations of the welfare of the child, the safety of the community, and the code's policy of favoring the least harsh disposition. A.D. v. State, 736 N.E.2d 1274, 1275-76 (Ind.Ct.App.2000); see also Ind. Code § 31-34-19-6. We may overturn L.L.'s disposition order only if we find the court has abused its discretion because its conclusion and judgment are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. A.D., 736 N.E.2d at 1276.

II. L.L.'s Disposition Order
L.L. contends that the juvenile court erred in entering a disposition order committing him to the Department of Correction for six months because a less restrictive dispositional alternative existed. We disagree.
Our supreme court has described the nature of the juvenile system in Indiana, stating that:
The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a criminal. For this reason the statutory scheme of dealing with minors is vastly different than that directed to an adult who commits a crime. Juvenile judges have a variety of placement choices for juveniles who have delinquency problems, ranging from a private home in the community, a licensed foster home, a local juvenile detention center, to State institutions such as the Indiana Boys School and Indiana Girls School. None of these commitments are considered sentences. A child can become a juvenile delinquent by committing acts that would not be a violation of the law if committed by an adult, such as incorrigibility, refusal to attend public school, and running away from home. A child can also become a delinquent by committing acts that would be a crime if *557 committed by an adult.... When a juvenile is found to be delinquent, a program is attempted to deter him from going further in that direction in the hope that he can straighten out his life before the stigma of criminal conviction and the resultant detriment to society is realized.
Jordan v. State, 512 N.E.2d 407, 408-09 (Ind.1987). The Indiana General Assembly has enacted different statutory provisions to govern juveniles who are adjudicated delinquent for committing acts which would be offenses if committed by an adult and juveniles who are adjudicated delinquent for committing "status offenses" and are in need of care, treatment, or rehabilitation. See Ind.Code § 31-37-1-1 to -2 ("criminal offenses"); Ind.Code § 31-37-2-1 to -6 ("status offenses"); see also A.D., 736 N.E.2d at 1277. Here, L.L. was adjudicated a delinquent for committing a status offensebeing suspended from school. Therefore, our inquiry is limited to the law governing a juvenile committing a status offense. As an initial matter, we note that the juvenile court was within its discretion to adjudicate L.L. a delinquent child. See Ind.Code § 31-37-2-3 (stating that a child commits a delinquent act if he violates compulsory school attendance before the age of 18).
At the disposition hearing, the juvenile court accepted L.L.'s plea agreement and committed him to the Department of Correction for six months. Under certain circumstances, the juvenile court may order a delinquent child who has committed a "status offense" to the Department of Correction. According to Indiana Code section 31-37-22-6:
If:
(1) a child fails to comply with IC 20-8.1-3 concerning compulsory school attendance as part of a court order with respect to a delinquent act under IC XX-XX-X-X (or IC 31-6-4-1(a)(3) before its repeal);
(2) the child received a written warning of the consequences of a violation of the court order;
(3) the issuance of the warning was reflected in the records of the hearing;
(4) the child is not held in a juvenile detention facility for more than twenty-four (24) hours, excluding Saturdays, Sundays, and legal holidays, before the hearing at which it is determined that the child violated that part of the order concerning the child's school attendance; and
(5) the child's mental and physical condition may be endangered if the child is not placed in a secure facility;
the juvenile court may modify its disposition order with respect to the delinquent act and place the child in a public or private facility for children under section 7 of this chapter.
Ind.Code § 31-37-22-6. Furthermore, Indiana Code section 31-37-22-7 provides that "[i]f the juvenile court modifies its disposition order under section 5 or 6 of this chapter, the court may order the child placed under one (1) of the following alternatives:... (5) [a]s a ward of the department of correction for housing in any correctional facility for children...." Ind. Code 31-37-22-7(a)(5).
Here, L.L. does not contest the fact that the juvenile court was vested with the authority to commit him to the Department of Correction or that the statutory requirements of Indiana Code section 31-37-22-6 were satisfied for his placement in such a facility. Rather, L.L. argues that his placement in the Department of Correction was not the least restrictive option available to the juvenile court.
*558 Indiana Code section 31-34-19-6 provides that:
If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
(1) is:
(A) in the least restrictive (most family like) and most appropriate setting available; and
(B) close to the parents' home, consistent with the best interest and special needs of the child;
(2) least interferes with family autonomy;
(3) is least disruptive of family life;
(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.
Ind.Code § 31-34-19-6.
A juvenile court is vested with flexibility in determining the appropriate dispositional alternative to impose on a juvenile who is adjudged to be delinquent. A.D., 736 N.E.2d at 1278. Although options other than commitment to an institution are available for juvenile courts to utilize in dealing with a juvenile, there are times when commitment to a suitable public institution is in the best interest of the juvenile and of society. In Matter of Jennings, 176 Ind.App. 277, 375 N.E.2d 258, 262 (1978). It appears from the record that the juvenile court did not believe that returning to the group home would be in the best interest of L.L. and of society after reviewing the number of probation violations he committed in the course of seven months.
L.L. contends that this court has vacated commitment to the Department of Correction in similar cases, specifically relying on E.H. v. State, 764 N.E.2d 681 (Ind.Ct. App.2002). In E.H., the juvenile was adjudicated a delinquent for the theft of two necklaces. The juvenile court placed wardship over him with the Department of Correction for placement in a juvenile detention facility for a one-year term. This court held that the one-year commitment was punitive and did not further the rehabilitative goals of the juvenile justice system. Id. at 685.
However, there are significant differences between E.H. and the present case. In E.H., the juvenile had been forced to change foster homes several times, but, at the time of the latest offense, had been placed in a foster home and was making significant improvements with adjustment issues. Id. at 686. Additionally, this court noted that E.H. had been making considerable progress in programs assisting with reunification with his family and with home-based counseling. Id. Finally, this court stated that, other than being the next step after a suspended commitment, the juvenile court provided no explanation for committing E.H. to the Department of Correction. Id.
In the present case, L.L. had been in the same foster home for approximately six years. During the seven months prior to his commitment to the Department of Correction, he committed the offense of conversion as well as several probation violations. As a result of these offenses, including twice taking the Joneses' car without permission, the Joneses no longer wished to adopt L.L.[1] At a hearing held February 19, 2002, Michael Jones told the juvenile court:

*559 And, right now the house is just stressed out and maybe in a couple of days from now, one or two days, we may, you know, we may, you know things may somewhat cool down, but as far as the matter of [L.L.], we can't see any part of renegotiation, reconciliation, with [L.L.] coming back to the house. We can't have a person in the house that we have to become a prisoner of our home.
The guardian ad litem agreed, stating that the Joneses no longer wanted L.L. in their home. Additionally, the Marion County Office of Family and Children officer present at the hearing stated that placing L.L. back in the Joneses' home was no longer an option. Therefore, although L.L. contends in his brief that he should have been placed back in the group home in order to maintain close contact with his foster family and to continue building toward adoption, it is clear from the record that was no longer an option by the time the juvenile court held its disposition hearing.
Also, the juvenile court here did not commit L.L. to the Department of Correction for six months without explanation. During the March 19, 2002, hearing, the juvenile court explained the motivation behind committing L.L. to the Department of Correction, stating that L.L. had been given several opportunities to better himself and had been given several warnings of the consequences of continuing to act improperly and L.L. still violated his probation. Additionally, the record reveals several instances where L.L. was in front of the court and was informed his behavior was not acceptable.
We hold that, although continued placement at the group home was an available, less restrictive response, the juvenile court was within its discretion in committing L.L. to the Department of Correction for six months.

Conclusion
We hold that the juvenile court's disposition was not clearly against the logic and effect of the facts and circumstances and, therefore, the juvenile court was within its discretion in committing L.L. to the Department of Correction for six months.
Affirmed.
RILEY, J., and MATTINGLY-MAY, J., concur.
NOTES
[1] However, the Joneses were still willing to adopt C.L., L.L.'s sister.