**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 04 2012, 8:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUSAN D. RAYL**
Smith Rayl Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S.J., ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A05-1203-JV-147 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Scott Stowers, Magistrate
Cause No. 49D09-1111-JD-003102

**December 4, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Following true findings for burglary and theft, S.J. was committed to the wardship of the Department of Correction ("DOC") for a determinate sentence. S.J. raises one issue for our review: whether the juvenile court abused its discretion in committing him to the DOC when the probation department recommended placement in a facility that was also secure but able to provide more specialized mental health treatment. Concluding S.J. has had opportunities to modify his behavior and failed, leaving the juvenile justice system with no viable less-restrictive alternative, and that adequate treatment for his mental health problems will be available through the DOC, we affirm.

## Facts and Procedural History

On November 14, 2011, Officer Darren McGuire noticed three teenage boys carrying a television down the street. S.J., then sixteen years old, told the officer his name was Larry Whitaker and gave a false date of birth. Office McGuire ran all three boys through the control operator and found no warrants. He then took the television, which had not yet been reported stolen, and told the boys that their parents could retrieve the television if it had not been stolen. At the time, S.J. was a runaway with an open warrant for violating his electronic monitoring supervised release. He had been on the run for two months. S.J. turned himself in and was arrested on November 15, 2011.

On February 15, 2012, the juvenile court entered a true finding that S.J. had committed the offense of burglary, a Class B felony if committed by an adult, and theft, a Class D felony if committed by an adult. Proceeding to disposition, the court incorporated the probation department's pre-dispositional report, which recommended out-of-home placement at the UHS Midwest Center for Youth and Families, Inc.

2

("Midwest"). In its report, probation noted that it first considered a recommendation for the DOC due to S.J.'s suspended commitment to the DOC, criminal history, and failure to follow prior less-restrictive alternatives. However, probation relied upon a psychological assessment report on S.J. by Dr. Aalsma to conclude that S.J. was in need of further mental evaluation and intense treatment. Probation noted that should S.J. re-offend or commit a violation, then there would be no option but commitment to the DOC as all other options would have been exhausted.

The juvenile court sentenced S.J. to 500 days in the DOC pursuant to Indiana Code section 31-37-19-10.[1] The court based its decision on S.J.'s criminal history and the DOC's ability to provide S.J. with adequate mental health treatment. Also, S.J. committed the burglary and theft at issue while on suspended commitment for another burglary committed in June 2010. When placing S.J. on that suspended commitment, the juvenile court had specifically warned S.J. that he would commit S.J. to the DOC if S.J. violated his commitment.

S.J. has a history of mental health problems, including conduct disorder, substance abuse, reading disorder, post-traumatic stress disorder ("PTSD"), and possible schizophrenia. In his report, Dr. Aalsma recommended placement at a highly-structured residential facility where S.J. would be closely monitored, feel relatively safe, and receive individual, behaviorally-focused therapy to address his conduct disorder and PTSD symptoms. For S.J.'s PTSD symptoms in particular, Dr. Aalsma recommended

---

[1] Indiana Code section 31-37-19-10 provides for a determinate commitment of a juvenile for up to two years in the DOC if the juvenile fits certain criteria. Specifically, the section applies to delinquent children who have committed one of the listed felonies in the provision, including burglary as a Class B felony; were at least fourteen years old when committing the felony; and have had two unrelated prior delinquent offenses that included acts that would be felonies if committed by an adult. S.J. meets these requirements.

prolonged exposure or cognitive processing therapy. At the disposition hearing, Joanna Yeftich, the master social worker with the Marion County Public Defender Agency who handled S.J.'s case, testified that probation recommended Midwest, the only residential program in Indiana to offer dialectical behavioral therapy for males. Upon cross-examination, Ms. Yeftich agreed that the DOC also met Dr. Aalsma's recommendation but added that the format of the therapy differed from that at Midwest.

S.J. also has a history of delinquent behavior. The arrest in this case was his ninth since 2010. S.J.'s criminal history includes battery in December 2010; the June 2010 burglary; auto theft, and operating a vehicle without a license in January 2010; a runaway charge; and multiple probation modifications. Although S.J. successfully completed home-based therapy in November 2010, he reoffended in December 2010. Then, after a successful visit with the Evans House in July 2011, S.J. cut off his monitor, breaking his electronic monitoring supervised release, and failed to complete Cross-Systems Care Coordination and substance abuse counseling. Since 2010, S.J. has failed electronic monitoring, the Teen Rap program, formal probation, and community service work. He was not at school on November 14, 2011, when the burglary and theft at issue occurred.

## Discussion and Decision

### I. Standard of Review

The choice of a specific disposition for a juvenile adjudicated to be a delinquent is within the discretion of the juvenile court, subject to the statutory considerations of the child's welfare, the community's safety, and the policy of favoring the least-harsh disposition. L.L. v. State, 774 N.E.2d 554, 556 (Ind. Ct. App. 2002), trans. denied; see also Ind. Code § 31-37-18-6. We may overturn the disposition order only if we find the

4

court has abused its discretion because its conclusion and judgment are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. L.L., 774 N.E.2d at 556.

## II. S.J.'s Disposition Order

S.J. argues that the juvenile court abused its discretion in committing him to the DOC when probation recommended Midwest, a facility that was also secure but able to provide more specialized mental health treatment. We disagree.

Our supreme court has described the nature of the juvenile system in Indiana, stating that:

> The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a criminal. For this reason the statutory scheme of dealing with minors is vastly different than that directed to an adult who commits a crime. Juvenile judges have a variety of placement choices for juveniles who have delinquency problems, ranging from a private home in the community, a licensed foster home, a local juvenile detention center, to State institutions such as the Indiana Boys School and Indiana Girls School. None of these commitments are considered sentences. . . . When a juvenile is found to be delinquent, a program is attempted to deter him from going further in that direction in the hope that he can straighten out his life before the stigma of criminal conviction and the resultant detriment to society is realized.

Id. at 556-57 (quoting Jordan v. State, 512 N.E.2d 407, 408-09 (Ind. 1987)).

Indiana Code section 31-37-18-6 lists factors that a juvenile court should consider when determining a juvenile's placement:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
> (1) is:
> (A) in the least restrictive (most family like) and most appropriate setting available; and
> (B) close to the parents' home, consistent with the best interest and special needs of the child;
> (2) least interferes with family autonomy;

5

(3) is least disruptive of family life;
(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

The statute by its terms requires placement in the least restrictive setting only "[i]f consistent with the safety of the community and the best interest of the child." Id.; see J.S. v. State, 881 N.E.2d 26, 29 (Ind. Ct. App. 2008). "Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement." J.S., 881 N.E.2d at 29.

S.J. argues his history of mental health problems makes his commitment to the DOC improper. Specifically, S.J. relies upon the probation department's pre-dispositional report, Ms. Yeftich's testimony, and Dr. Aalsma's report to argue that he should have been admitted to Midwest, a facility that was also secure but able to provide more specialized mental health treatment. We disagree. As Ms. Yeftich admitted, the DOC is able to provide S.J.'s required mental care. S.J. fails to provide authority to support his argument that the juvenile court abused its discretion in providing adequate—but not necessarily the most specialized—mental health treatment.

Although we sympathize with S.J.'s argument and certainly acknowledge that he is an individual grappling with a number of problems, we place great weight on the juvenile court's conclusion that "all least restrictive alternatives consistent with the safety and well being of the community have been exhausted." Transcript at 155. In the past few years, S.J. has participated in multiple juvenile programs. None have worked. Despite numerous opportunities to reform his behavior, S.J. has continued to reoffend and disrespect the rule of law. See J.J. v. State, 925 N.E.2d 796, 802 (Ind. Ct. App. 2010)

6

(affirming DOC placement for a juvenile with mental health and substance abuse problems who had participated in multiple juvenile programs was not an abuse of discretion), trans. denied; cf. R.A. v. State, 936 N.E.2d 1289, 1291 (Ind. Ct. App. 2010) (holding that DOC placement for a juvenile with no prior contact with the juvenile justice system was an abuse of discretion).

Moreover, we cannot agree with S.J.'s contention that placement at the DOC was punitive. S.J. committed the burglary and theft at issue while on suspended commitment for an earlier burglary. When placing S.J. on suspended commitment, a less restrictive option, the juvenile court specifically warned S.J. that it would commit S.J. to the DOC if S.J. violated his commitment. S.J. had an opportunity to modify his behavior outside the DOC; nevertheless, he failed, committing another burglary. See K.A. v. State, 775 N.E.2d 382, 387 (Ind. Ct. App. 2002) (holding that DOC placement, in response to juvenile's violation of her suspended commitment, was not punitive), trans. denied; see also L.L., 774 N.E.2d at 559 (holding that DOC placement, despite the availability of a less-restrictive option, was not an abuse of discretion when the juvenile had been given several opportunities to better himself and had been given several warnings of the consequences of continuing to act improperly and still violated his probation).

## Conclusion

The juvenile court's disposition was not clearly against the logic and effect of the facts and circumstances. S.J., quite simply, has made too many bad choices and left the juvenile justice system with no alternative but to order that he be committed to the DOC where adequate treatment for his mental health problems will be available. Under these

circumstances, the juvenile court was within its discretion in committing S.J. to the DOC.

Therefore, we affirm.

Affirmed.

BAKER, J., and BRADFORD, J., concur.