## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2018, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D.P.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

March 9, 2018

Court of Appeals Case No.
69A04-1710-JV-2531

Appeal from the Ripley Circuit Court

The Honorable Ryan J. King, Judge

Trial Court Cause No.
69C01-1606-JD-15

**May, Judge.**

[1] D.P. appeals the juvenile court's entry of an order placing him in the Department of Correction ("DOC"). D.P. argues the juvenile court abused its

discretion by placing him in the DOC just because he "demonstrated a little teenaged attitude while at the YES Home[.]"[1]  (Appellant's Br. at 13.)  As we determine the juvenile court did not abuse its discretion when it placed D.P. in the DOC, we affirm.

## Facts and Procedural History

In April 2016, D.P. stole three items from a store and a few days later ran away from home.  On July 6, 2016, the State requested permission to file a Petition Alleging Delinquency for the status offense of runaway[2] and for an act that, if committed by an adult, would be Class A misdemeanor theft.[3] The juvenile court granted the State permission to file the petition.

On September 1, 2016, at the dispositional hearing, D.P. admitted these acts. The juvenile court adjudicated D.P. delinquent and "award[ed] wardship of [D.P.] to the [DOC]" with that commitment suspended "on the condition [sic] [D.P.] shall be placed under the supervision of the Ripley County Probation Department and he shall comply with conditions of **probation for a period of 355 days**[.]"  (App. Vol. II at 143) (emphasis in original).  Conditions of probation included paying fees; residing with his mother; not consuming,

---

[1] YES Home, "Youth Encouragement Services," is a "residential group home for youths ages 13 thru 18, providing a structured, nurturing environment for abused, neglected and abandoned children." https://www.yeshome.org/ (last visited Feb. 23, 2018).

[2] Ind. Code § 31-37-2-2 (2015).

[3] Ind. Code § 35-43-4-2 (2014).

amongst other things, illegal substances, alcoholic beverages or tobacco; and participating in therapy.

[4] On September 14, 2016, the State filed a petition to modify D.P.'s dispositional order due to D.P.'s violation of the conditions of probation. Namely, when D.P. reported to the probation department, his parents "advised that when en route to the Probation Department, [D.P.] attempted to jump out of the moving car[.]" (App. Vol. III at 2.) At the appointment, D.P. continued to make suicidal statements. The probation officer requested detention of D.P. because "he was a risk to himself and the community[.]" (*Id.* at 3.) The request was granted. The State requested that, along with the previously ordered conditions of probation, D.P.'s residence be changed to the Dearborn County Juvenile Detention Center and he be ordered to "participate in a Psychological Evaluation with Connor and Associates." (*Id.*) On September 26, 2016, the State amended its petition to include allegations of marijuana possession.

[5] Dr. Schwerzler completed a psychological evaluation of D.P. and diagnosed him with "Conduct Disorder, Marijuana Use Disorder, unspecified, and Narcissistic Personality Traits." (*Id.* at 31.) Dr. Schwerzler recommended therapy, substance abuse counseling, drug testing, and supervised probation. He noted D.P.'s "suicidal threat was a clear manipulation [but] cautioned that when [D.P.] is angry he may act impulsively and put himself or others in danger to prove his point." (*Id.*)

[6] D.P. admitted the allegations of incorrigibility and marijuana possession. The juvenile court denied the State's request to place D.P. in the juvenile detention center. Instead, the court ordered the previously-ordered conditions of probation to continue and added the following:

> 1. The juvenile and parents shall participate in intensive individual and family therapy and Home-based Caseworks Services with the Intercept Program as provided by Youth Villages, as approved by the Probation Service Consultant, as directed by the Probation Department as a State Paid Service, and follow all recommendations as made by the therapist.
>
> 2. The juvenile shall participate in psychiatric services, if recommended by a mental health provider.
>
> 3. The juvenile shall report to the Ripley County Probation Department for weekly urine drug screens at the discretion of the Probation Department.
>
> 4. The juvenile shall report any absence from school within 24 hours and provide documentation.
>
> 5. The juvenile shall obtain a Substance Abuse Evaluation, at his expense within thirty (30) days, and follow all recommendations for treatment and care.

(*Id*. at 40-41.)

[7] Until June 2017, D.P.'s violations were traffic-related. On June 4, 2017, D.P. "did not abide by the curfew set by the Probation Department and left the State of Indiana without permission from his parents or Probation Officer." (*Id*. at

49.) D.P. reported he had traveled to West Virginia, Virginia, Tennessee, Kentucky, and Georgia. He funded this travel with a fraudulently-acquired credit card. On his return, when given a drug test, D.P. said he would fail it. He did. The probation officer asked D.P. how he passed a recent pre-employment drug screen. D.P. "stated he had 'faked it'[.]" (*Id.*) When probation officers searched D.P.'s vehicle and his bedroom at his mother's house, they found "one bottle of Strawberry Moonshine, Marijuana seeds and stems, one pill bottle containing the residue of urine, a credit card for [D.P's father], a pair of brass knuckles, and a knife." (*Id.* at 50.) The State filed a petition for modification of dispositional order.

[8] On July 28, 2017, police stopped D.P. for speeding. The subsequent intake information sent to the State alleged D.P. was driving while suspended, a Class A misdemeanor if committed by an adult.[4] The State amended its petition for modification. On August 11, 2017, police stopped D.P. for driving while suspended. The police found marijuana and cigarettes in his vehicle. The intake information sent to the State alleged D.P. had committed maintaining a common nuisance, a Level 6 felony if committed by an adult;[5] driving while suspended, a Class A misdemeanor if committed by an adult; and possession of

---

[4] Ind. Code § 9-24-19-2 (2016).

[5] Ind. Code § 35-45-1-5(c) (2017).

marijuana, a Class A misdemeanor if committed by an adult.[6] (*Id*. at 110.) The State filed a second amended petition for modification.

[9] At the modification hearing, D.P. expressed remorse. The State, with great reluctance, suggested D.P. be placed in YES Home for thirty days, rather than the DOC. The juvenile court, also with great reluctance, agreed. It warned D.P. that this was his very last chance. The juvenile court told D.P.:

> [Y]ou don't give me much confidence. The only confidence you give me is that you're gonna do something stupid and that's the only reasonable conclusion that can be drawn from your Petition and your modification and what you just said today. I mean, this is a pretty significant violation. I'll place you at the YES Home until September 28th. If you mess up, you get kicked out of the YES Home or anything like that, you're just, you're going to go to detention until September 28th. So, once you get there, once you get yourself checked in, if you get lippy, you leave, you get caught with marijuana or anything like that, you're going to go there until our next hearing, there being the Dearborn County Detention facility, as soon, that's just going to be based upon any information. If you go there and you don't qualify, for whatever reason, which I guess you've been approved so far, but I, I think there's a fair chance you're going to get there and with your attitude and what you've done so far, they're going to think, uh, "He's not good for this place.", [sic] and as soon as we get that call, then you're going to go to Dearborn County Detention facility until the 28th, um, because I don't want you there if you're going to be corrosive to the other kids that are there and you're older than most of them, um, and you ought to be a leader, but I, you haven't showed the Court that yet, so if you, if

---

[6] Ind. Code § 35-48-4-11(a)(1) (2017).

you're even, if there's even a wafting smell that you're not doing exactly what you're told, then you're going to go to Dearborn County and then we'll just let you sit there for thirty (30) days and then bring you back.

(Tr. at 12-13.)  The juvenile court reiterated its warnings to D.P. in several different ways.  It warned D.P. about the consequences of even a minor slip-up while he was at YES Home.

[10]  When D.P. returned for the September 28, 2017, hearing, Amy Phillips, the Director of YES Home, said:

> . . . [D.P.] has not broken any major rules, however, he is not making progress through the phase program.  Um, as we, when we meet with him, both my, and the staff and I met yesterday to di . . . to discuss his progress.  Uh, he, several times, has stated he'd rather be at DOC than at the YES Home.  Uh, my staff has bent over backwards to get him to work and to college.  Um, very little gratitude and very much an attitude of, um, almost like he's doing, and this sounds awkward, but like he's doing us a favor being at the YES Home.  My staff have worked countless hours just in transportation, Your Honor, um, trying to, so that we can maintain what he did have going for him, that was going well, which was work and school.  However, as far as he, he is not able to identify any of his behaviors that have placed him at the YES Home.  He, I, just this week, went over his, um, probation orders which stated his violations.  He argued almost every single point, including the Possession of Marijuana and the use of marijuana, which he does not see an issue with, um, and has several times indicated to me that, that's not a problem.  If he was at any other state and that it wouldn't be an issue, even though I've indicated to him he is a juvenile and that is illegal.

(*Id*. at 20.)

[11] Because of D.P.'s age, the fact he was attending college, rather than high school, and because he was deemed a flight risk, Kerri Fox, D.P.'s probation officer, said D.P.'s residential placement options were limited. The YES Home was one of the few residential placements that would accept D.P. but it was not working out there. She recommended D.P. be placed at the DOC because "he's out of options" and such a placement would be in D.P.'s best interest. (*Id*. at 27.)

[12] D.P. testified he was working two part-time jobs, attending Ivy Tech Community College, had been accepted to three universities, and had paid off his probation fees. D.P. expressed homesickness and remorse for his actions that resulted in his placement at YES Home. He admitted he is "not really good with communication skills [and he] kind of come[s] across as rude sometimes[.]" (*Id*. at 32.) He said he thinks he was "misunderstood" at the YES Home. (*Id*. at 37.)

[13] Not finding D.P.'s testimony compelling, the juvenile court ordered D.P. be removed from YES Home and "transported . . . to the Logansport Juvenile Intake Facility[.]" (App. Vol. III at 138-39.) The juvenile court found he admitted to the violations of the conditions of his probation and had "at least four (4) prior modifications of his Probation." (*Id*. at 138.) The juvenile court found placement in the DOC to be the "least restrictive placement and in the child's best interest." (*Id*.)

# Discussion and Decision

[14]    D.P. asserts the juvenile court abused its discretion in placing him in the DOC. He argues that although he had several violations when he lived with his mother, he had not broken the rules at YES Home and placement in the DOC was not the least restrictive environment in which he could have been placed. He requests he either be placed with his mother or back at YES Home.

[15]    We initially note that "the purpose of the juvenile process is vastly different from the criminal justice system." *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). The goal of juvenile proceedings is "*rehabilitation* so that the youth will not become a criminal as an adult." *Id.* (emphasis in original). The juvenile court has discretion in choosing the disposition for a juvenile adjudicated delinquent. *L.L. v. State,* 774 N.E.2d 554, 556 (Ind. Ct. App. 2002), *reh'g denied, trans. denied.* This discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id.; see also* Ind. Code § 31-34-19-6. We may overturn D.P.'s dispositional order only if the court abused its discretion. *L.L.,* 774 N.E.2d at 556. An abuse of discretion occurs when the juvenile court's judgment is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[16]    D.P. alleges his placement in the DOC was because the YES Home did not want to provide transportation to D.P.'s jobs and college and because D.P. gave them "teenaged attitude[.]" (Reply Br. at 4.) However, the placement in the DOC was not merely because of D.P.'s actions at YES Home. The juvenile

court did find D.P. had "not progressed at the YES Home and ha[d] shown a continued disrespect for authority[,]" (App. Vol. III at 138), but it also found D.P. had "at least four (4) prior modifications of his Probation[,]" (*id*.), based in part on his leaving Indiana and going on a five state road trip paid for with fraudulent credit cards D.P. opened using his father's date of birth.[7] The juvenile court told D.P. at the hearing in August that he was getting a thirty day trial at YES Home but that "if you get lippy, you leave[.]" (Tr. at 12.) The juvenile court told D.P. that if it received "even a wafting smell that you're not doing exactly what you're told, then you're going to go to Dearborn County [Juvenile Detention Center] and then we'll just let you sit there for thirty (30) days and then bring you back." (*Id*. at 13.)

[17] Although D.P. may not have broken any rules at YES Home, Amy Phillips, the Director, stated he was not making any progress there. D.P. told the staff at YES Home he would rather be at the DOC than with them. He was unable "to identify any of his behaviors that have placed him at the YES Home." (*Id*. at 21.) He showed "very little gratitude and very much an attitude . . . like he's doing us a favor being at the YES Home." (*Id*.) This sounds like precisely the behavior the juvenile court warned D.P. would get him sent to the DOC. D.P. was not told he would need to violate any rules of YES Home to be removed from there—he was told removal would occur "if you get lippy[.]" (*Id*. at 12.)

---

[7] D.P. and his father share the same first and last names.

Like all the other chances D.P. was given, he chose to squander this one. Accordingly, we affirm the juvenile court's placement of D.P. in the DOC. *See D.E. v. State*, 962 N.E.2d 94, 97 (Ind. Ct. App. 2011) (no abuse of discretion in placement of juvenile at DOC where less restrictive rehabilitation efforts had been unsuccessful).

[18] Affirmed.

Vaidik, C.J., and Altice, J., concur.