## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 19 2019, 8:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark F. James
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| G.B.W.,<br>A Child Alleged to be a Delinquent Child,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner.* | December 19, 2019<br><br>Court of Appeals Case No.<br>19A-JV-1385<br><br>Appeal from the St. Joseph Probate Court<br><br>The Honorable Jason Cichowicz, Judge<br><br>Trial Court Cause No.<br>71J01-1807-JD-218<br>71J01-1811-JD-389 |

**Tavitas, Judge.**

## Case Summary

[1] G.B.W. appeals her commitment to the Indiana Department of Correction ("DOC") after her adjudication as a delinquent and subsequent probation violations. We affirm.

## Issue

[2] G.B.W. raises a single issue, which we restate as whether the juvenile court abused its discretion when it committed G.B.W. to the DOC.

## Facts

[3] On July 17, 2018, Keontah White reported that her vehicle was stolen while parked outside a food mart. The following day, while on routine patrol, Officer Martin Mullins, with the South Bend Police Department, saw White's stolen vehicle. In his fully marked patrol car, Officer Mullins turned on his lights and sirens to initiate a traffic stop.

[4] The vehicle reduced its speed but did not stop. Eventually, the vehicle slowed down significantly due to nearby road construction; at that point, Officer Mullins was able to pull in front of the vehicle to force it to stop. After the vehicle stopped, the front passenger and back seat passenger fled. Fourteen-year-old G.B.W. was the vehicle's driver. G.B.W. was detained, and while in detention, G.B.W. told a probation officer that she stole the vehicle because she was "bored." Appellant's App. Vol. II p. 20.

On July 25, 2018, the State filed a petition alleging G.B.W was a delinquent for committing: Count I, an act that would be considered resisting law enforcement if committed by an adult, a Level 6 felony; Count II, an act that would be considered theft if committed by an adult, a Class A misdemeanor; and Count III, an act that would be considered operating a motor vehicle without ever receiving a license if committed by an adult, a Class C misdemeanor. G.B.W. entered an admission agreement on August 1, 2018, and the juvenile court adjudicated G.B.W. a delinquent on Counts I and II; Count III was dismissed. The juvenile court ordered G.B.W. to home detention with GPS electronic monitoring.

On August 24, 2018, G.B.W. cut off the ankle bracelet of her electronic home monitoring device and left her home in violation of the juvenile court's home detention order. G.B.W. escaped for forty-six days. On November 11, 2018, the State filed another petition alleging delinquency for committing an act that would be considered escape if committed by an adult, a Level 6 felony.

The predispositional report prepared on December 4, 2018, stated:

> [G.B.W.] herself is on a dangerous path. Taking little responsibility for her actions and watching from across the street while the victim was in distress after losing her car is insensitive and cold. Denying a gang affiliation while clearly displaying it on social media is a serious concern. Stealing a car and evading police at 14 years old is brazen. Removing a GPS monitor and remaining on the run for 46 days cannot be minimalized because she turned herself in. While she may argue that she willingly turned herself in, the amount of time on the run is close to seven weeks. Should the probation department discount the days she

was gone simply because she decided on a random day to turn herself in? For 45 days, she decided to NOT turn herself in, which is far longer than the one day in which she decided to turn herself in. [G.B.W.] has shown little ability to follow simple orders of the Court as mentioned in a previous portion of this report. Most recently, when given the opportunity to return home on GPS for the second time, she continued to disregard the Court by barely attending school and arguing with teachers.

For any juvenile to succeed within our court system, a parent (whether ordered to do so or not) must buy in to the services that have been ordered. It is with great misfortune that [G.B.W.], with her serious criminogenic thoughts and actions, may never receive that buy in from [her mother].

*Id.* at 32. Accordingly, probation recommended that G.B.W. be placed in DOC at Indiana Girls School.

[8] On December 5, 2018, G.B.W. entered an admission to the escape charge. The juvenile court proceeded to disposition and sentenced G.B.W. to twenty days suspended in juvenile detention, home detention for sixty days, "[s]trict and [i]ndefinite [p]robation," and ordered G.B.W. to participate in services, including the Juvenile Justice Center Day Reporting Program ("JJC program"). *Id.* at 39.

[9] On February 26, 2019, a modification report was filed, which alleged that G.B.W. has accumulated eight absences from the JJC program since she began the program on December 31, 2018. The report also alleged that, on February 24, 2019, G.B.W. "was brought into secure detention . . . for Criminal Trespass, Resisting Law Enforcement, False Informing and Unauthorized

Entry of a Motor Vehicle." *Id.* at 47. Furthermore, the report alleged that G.B.W. tested positive for marijuana on February 25, 2019.

[10] On March 6, 2019, the trial court held a joint initial hearing on the February delinquency petition and the petition for modification. G.B.W. admitted to the allegations regarding false informing and resisting law enforcement. As to the modification report, the juvenile court ordered G.B.W. to the DOC. G.B.W. now appeals her commitment to the DOC.

## Analysis

[11] G.B.W. argues that the juvenile court abused its discretion in sentencing her to the DOC because less restrictive alternatives for G.B.W. were available and should have been utilized. "The juvenile court has discretion in choosing the disposition for a juvenile adjudicated delinquent." *D.E. v. State,* 962 N.E.2d 94, 96 (Ind. Ct. App. 2011) (citing *L.L. v. State,* 774 N.E.2d 554, 556 (Ind. Ct. App. 2002), *reh'g denied*). "The discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition." *Id.* "We may overturn [G.B.W.'s] disposition order only if the court abused its discretion." *Id.* "An abuse of discretion occurs when the juvenile court's judgment is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[12] Indiana Code Section 31-37-18-6 states:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
> >
> > (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[13] G.B.W. compares her case to *D.P. v. State,* 783 N.E.2d 767 (Ind. Ct. App. 2003). In *D.P.*, a panel of this Court reversed the juvenile court's placement of the juvenile in the DOC. In reaching its conclusion, the panel considered that the juvenile "was not on probation"; the juvenile "did not show any unresponsiveness to 'less-restrictive alternatives'"; the juvenile's only other contact with the juvenile justice system was successful; and the juvenile's "commission of two crimes in a short period of time hardly amounts to the

sustained period of criminal conduct" our Court has considered in other cases. *D.P.,* 783 N.E.2d at 770-71.

[14] G.B.W. argues her situation is similar because she too committed only two offenses within a short period of time, had minimal contact with the juvenile justice system, and had only a short experience with probation services. In other words, she argues, her conduct does not rise to the level of "repetitive and serious misconduct." *Id.* at 771. We disagree and find *D.P.* distinguishable. Unlike the juvenile in *D.P.,* G.B.W. committed several offenses in a short period of time, and significantly, committed two of those offenses while on probation.

[15] At the dispositional hearing on G.B.W.'s escape offense, which was the result of G.B.W. cutting off her ankle bracelet, the probation department recommended G.B.W. be committed to the DOC. Still, the juvenile court ordered a less restrictive alternative in the form of home detention. G.B.W. then admitted to false reporting and resisting law enforcement, and she did not adhere to the juvenile court's dispositional order. The juvenile court's previous dispositional orders regarding G.B.W. demonstrate that the trial court considered and utilized a less restrictive alternative twice, prior to placing G.B.W. in the DOC. The decision to place G.B.W. in the DOC was not clearly against the logic and effect of the facts and circumstances before it. *See D.E. v. State,* 962 N.E.2d 94, 97 (Ind. Ct. App. 2011) (finding no abuse of discretion when the juvenile was committed to DOC when the juvenile was on probation at the time of the delinquent acts; already violated probation once before by

testing positive for marijuana; and was suspended or expelled from multiple schools).  Accordingly, the juvenile court did not abuse its discretion in placing G.B.W. in the DOC.

## Conclusion

The trial court did not abuse its discretion in placing G.B.W. in the DOC.  We affirm.

Affirmed.

Vaidik, C.J., and Najam, J., concur.