## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 31 2019, 11:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paula M. Sauer
Danville, Indiana

ATTORNEYS FOR APPELLEE:

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of R.W., a Child Alleged to be Delinquent,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 31, 2019

Court of Appeals Case No. 19A-JV-1729

Appeal from the Hendricks Superior Court

The Honorable Karen M. Love, Judge

Trial Court Cause No. 32D03-1712-JD-235

**Tavitas, Judge.**

## Case Summary

[1] R.W. appeals his commitment to the Indiana Department of Correction ("DOC") after his adjudication as a delinquent and subsequent probation violations. We affirm.

## Issue

[2] R.W. raises a single issue, which we restate as whether the juvenile court abused its discretion when it committed R.W. to the DOC.

## Facts

[3] In 2017, fifteen-year-old R.W. lived at home with his mother, E.S., ("Mother") and younger sister. R.W.'s father, R.W. ("Father") has a criminal history and is not involved in R.W.'s life; Mother has an order for protection against Father. R.W. has a history of mental health issues and marijuana abuse.

[4] In August 2017, the State filed a petition in Hendricks County alleging R.W. committed an act that would be considered dangerous possession of a firearm if committed by an adult, a Class A misdemeanor, after police discovered a loaded gun under R.W.'s bed while responding to a disturbance at Mother's home between Mother and R.W. on August 17, 2017.

[5] On September 11, 2017, the State filed a petition in Marion County alleging R.W. was a delinquent for committing three counts of an act that would be considered theft if committed by an adult, Class A misdemeanors, after R.W. was caught stealing items from vehicles. The case was transferred to Hendricks

County, where R.W. resided and where his August 2017 offense was still pending.

[6] On October 16, 2017, the probation department filed a petition alleging that R.W. violated the terms of his supervised community adjustment. The specific allegations were that, on October 10, 2017, R.W. was arrested in Hendricks County for: (1) an act that would be considered dealing in marijuana if committed by an adult, a Class A misdemeanor; (2) an act that would be considered possession of paraphernalia if committed by an adult, a Class C misdemeanor; (3) an act that would be considered possession of an altered handgun if committed by an adult, a Level 5 felony; (4) an act that would be considered unauthorized entry of a motor vehicle if committed by an adult, a Class B misdemeanor; and (5) an act that would be considered residential entry if committed by an adult, a Level 6 felony.

[7] On October 23, 2017, R.W. was adjudicated a delinquent for: (1) the October 10, 2017 offense of an act that would be considered possession of an altered handgun if committed by an adult, a Level 5 felony; and (2) the August 2017 firearm offense. The remaining October 2017 offenses were dismissed. For the October 2017 offense, R.W. served fourteen days in detention, received a suspended commitment to the DOC, and was placed on twelve months of probation. For the August 2017 offense, R.W. served sixteen days in detention and was not ordered to serve probation because "[p]robation supervision [was] ordered" for the October 2017 offense. Appellant's App. Vol. II p. 134.

[8] On November 13, 2017, R.W. entered an admission agreement regarding the September 2017 Marion County offenses; R.W. admitted to one count of theft and the other counts were dismissed. After a dispositional hearing on February 26, 2018, the juvenile court entered a dispositional order placing R.W. on a suspended DOC commitment, in White's residential treatment program ("White's"), and three months of probation after completion of the program at White's.

[9] R.W. completed White's successfully in August 2018 and was released to begin his three months of probation. At a review hearing on November 5, 2018, R.W. did not appear for the hearing due to a calendar error; the juvenile court re-set the hearing for later in November. At the November 5 hearing, however, the State told the juvenile court that R.W. missed four drug screens in September. The hearing was reset for November 19, 2018, and during the hearing, the probation department informed the juvenile court that it would be filing a violation.

[10] On December 4, 2018, the State filed a petition to modify R.W.'s supervision, alleging that: (1) R.W.'s drug screens on November 8, 2018, and November 16, 2018, tested positive for marijuana; and (2) R.W. failed to call into the drug screen line eighteen times as of October 21, 2018. At the conclusion of the hearing on December 10, 2018, R.W. admitted he tested positive for marijuana, and the juvenile court entered a dispositional order for an additional four months of probation. The juvenile court also gave R.W. an opportunity to be released from probation early if he had six consecutive negative drug screens.

[11]    On January 23, 2019, the State filed another petition to modify R.W.'s supervision. The petition alleged that: (1) since October 2018, R.W. has only called into the drug screen line ten times; and (2) R.W. failed to report to his required drug screens on January 3, 11, and 17, 2019. On February 4, 2019, R.W. admitted to the allegations in open court and the juvenile court again extended R.W.'s probation until May 31, 2019. The juvenile court again gave R.W. the opportunity to complete probation early if he had six negative drug screens.

[12]    On May 13, 2019, the State filed another petition to modify R.W.'s supervision. The petition alleged that: (1) as of the February 4, 2019, hearing, R.W. failed to call into the drug screen line thirty-three times; (2) R.W. failed to report to his required drug screens on February 5, March 13, March 19, April 23, and May 3, 2019; and (3) R.W.'s drug screens on February 12, February 22, March 1, March 8, March 18, April 9, and April 15, 2019, were all positive for marijuana. A hearing was set for June 3, 2019 on the petition; however, prior to the hearing, the State moved to amend its petition on May 28, 2019.

[13]    The amended petition alleged that: (1) R.W. failed to submit to a required drug screen on May 16, 201[9]; (2) R.W.'s urine sample on May 9, 2019, was positive for amphetamines; and (3) a probation officer witnessed a video of R.W. holding a gun. An emergency detention order was issued on May 29, 2019; however, the order was recalled on May 31, 2019.

[14] On June 24, 2019, R.W. admitted that he failed to call into the drug line several times, failed to submit several drug screens, and tested positive for marijuana more than once. Mother also testified at the hearing that, on May 29, 2019, via telephone, Mother informed probation of her concern that R.W. may be abusing Xanax.

[15] At the June 24, 2019, hearing, the State also attempted to introduce a video of R.W. found on social media; R.W. objected to admission of the video. The juvenile court overruled R.W.'s objection and gave the State the opportunity to lay foundational evidence regarding the video. Shelby Wiser, R.W.'s probation officer, testified that she viewed the video about a month prior to the hearing. Wiser testified:

> The other juvenile in this video is making threats towards [a third] juvenile that I had on probation. [The third juvenile] went to the principal because he was concerned that he might violate probation if something were to happen because they were making – he was – this one, was making threats towards him so he was concerned so he sent it – showed it to the principal and then I was notified on May 16 which is the first time I saw the video.

Tr. Vol. II pp. 109-110. No date was posted on the video and the date of the recording could not be ascertained. Wiser testified that the video was posted on R.W.'s "Snapchat" account. *Id.* at 108. Again, R.W. objected to admission of the video, which the trial court overruled.

[16] Wiser recommended the juvenile court send R.W. to the DOC because she was "concerned for his safety and wellbeing." *Id.* at 111. Wiser testified she did not

believe that she could effectively supervise him, and Wiser was "at a loss" and unsure how else to help R.W.; R.W. was "being screened once per week and he continue[d] to fail to call daily so, [Wiser did not] see what other option there [was] at th[at] point." *Id.* Wiser identified the "multiple programs" at the DOC that may help R.W., including the "substance abuse program" and R.W. would receive an assessment that would help the DOC identify services that would be most helpful to R.W. *Id.* at 112.

[17] Before taking the matter under advisement, the juvenile court summarized R.W.'s history:

> So just looking at - this was a case that was actually venued to Hendricks County for disposition from Marion County and in the pre-dispositional report I show that, uh, in November of 2017 - of 2015 he committed criminal mischief and he was adjudicated for that, uh, on January 25 of '16. He was placed on probation, uh, but he was released early on that case, then, uh, on in August of 2017 he was charged with dangerous possession of a firearm and he was adjudicated for that in October. Uh, then after that, let's see there was another case so he had that in August then in October there was another delinquent act for, uh, in which he eventually admitted which was possession of an altered handgun so we have two handgun allegations all prior to, uh, this case. Then in this case I ordered him to go to White's and he did, let's see. So then in September of '18 he was released from White's, he had after care which included individual therapy, family therapy, home based counseling. That was in October of '18. Then we had the December 18 petition to modify, then on December 10 of '18 I continued probation for four months but ordered that he could be released early with six consecutive negative drug screens. Then in January we had a petition to modify regarding the failed drug screens. In February I extended

> probation to May 31 then on May 14 more allegations regarding
> drug screens and failure to screen, then there was a supplemental
> regarding this video and testing positive on May 9 for
> amphetamines. Uh, and so when he appeared here on June 3 the
> Court put him on home detention.

*Id.* at 114-15. The juvenile court continued the hearing for one week, continued R.W. on home detention until the next year, and ordered R.W. to take a drug test every day until the subsequent hearing one week later. No evidence appears in the record that indicates R.W. tested positive.

[18] The juvenile court held a hearing on July 1, 2019, and sentenced R.W. to the DOC. The juvenile court entered a dispositional order and found:

> On 6-24-19 youth appeared with counsel and his mother and
> admitted that he failed to call the drug testing hotline multiple
> times, failed to submit to urine drug screens on 2/5/19, 3/13/19,
> 3/19/19, 4/23/19 and 5/3/19 and tested positive for marijuana
> on 2/12/19, 2/22/19, 3/1/19, 3/8/19, 3/18/19, 4/9/19 and
> 4/15/19.
>
> State and probation asked the Court to send youth to the Indiana
> Department of Corrections [sic]. Youth made passionate plea for
> continued leniency.
>
> State presented credible evidence that youth violated his release
> on home detention by failing to provide a drug screen.
>
> Further, State presented a video of a post to Snapchat which
> showed youth and another youth the Court had on probation for
> armed robbery and both were waving a handgun.

The exact date of the video posted to Snapchat is unknown. Probation Officer Shelby Wiser saw the video on or about 5-16-19.

The Court has seen youth multiple times since he was fourteen years old. Youth has grown and his physical appearance including his size has changed since that time. Based on youth's physical appearance in the video the court is confident that the video was taken after youth completed residential treatment. Since leaving residential treatment youth appears to be working out and now has a stocky build as shown in the video. The Court asked youth if he had anything else to say after the Court saw the video and youth responded "It's just all a video, Your Honor, it was just me being dumb and shoulda (sic) never got posted on a Snapchat. None of that. And, it's all-" Youth's attorney interrupted him.[1]

Youth has had the benefit of residential placement and intensive probation with Cross Systems of Care. Youth continues to use illegal substances and fails to take his substance abuse seriously.

An indeterminate placement at IDOC is the only option left if youth is to receive the services he needs before he becomes an adult.

Appellant's App. Vol. II pp. 186-87. R.W. now appeals.

---

[1] As R.W. correctly notes in his brief, R.W.'s entire final statement to the juvenile court was: "It was just me being dumb and it should have never got posted on a Snap Chat, none of that, it's – it's old." Tr. Vol. II p. 115.

## Analysis

R.W. argues the juvenile court abused its discretion in committing R.W. to the DOC. "The juvenile court has discretion in choosing the disposition for a juvenile adjudicated delinquent." *D.E. v. State,* 962 N.E.2d 94, 96 (Ind. Ct. App. 2011) (citing *L.L. v. State,* 774 N.E.2d 554, 556 (Ind. Ct. App. 2002), *reh'g denied*). "The discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition." *Id.* "We may overturn [R.W.'s] disposition order only if the court abused its discretion." *Id.* "An abuse of discretion occurs when the juvenile court's judgment is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

Indiana Code Section 31-37-18-6 states:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
>
> > (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;

> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[21] R.W.'s argument is that the juvenile court abused its discretion by both: (1) not placing R.W. in a less restrictive alternative; and (2) placing R.W. at the DOC after "relying on the video to determine that [R.W.] was a risk to the safety of the public." Appellant's Br. p. 10.

[22] To the extent that R.W. is arguing that the video was improperly admitted, we note that the rules of evidence do not apply in probation revocation hearings the same way they apply in other proceedings. *See* Ind. Rules of Evidence 101(d). Even if it was error for the juvenile court to consider the undated video as a reason to place R.W. in the DOC, the error was harmless. *See K.A. v. State,* 775 N.E.2d 382, 389 (Ind. Ct. App. 2002) (holding that the juvenile court's reference to a predispositional report as a reason for disposition was harmless error because the "incorporated information" was contained in other reports), *trans. denied.* The juvenile court also noted several other reasons for R.W.'s placement, including his continued drug use and repeated failure to comply with the juvenile court's orders.

[23] R.W. argues that, still, the juvenile court abused its discretion by placing R.W. in the DOC because there was no evidence it was for R.W.'s benefit; for the

safety of the community; or the least harsh dispositional alternative available. We disagree.

[24] First, R.W. overlooks that the least restrictive alternative is only required if that placement is consistent with both the safety needs of the community and the child's best interests. *See J.B. v. State,* 849 N.E.2d 714, 717 (Ind. Ct. App. 2006). As a panel of our Court said in *J.B.,* 849 N.E.2d at 718:

> As a fifteen-year old, J.B. has had more than his share of experiences with the juvenile court system. He has had many chances to modify his behavior but has consistently rejected those opportunities by violating his probation, committing new offenses, and continuing to abuse drugs. Although we are sympathetic with those struggling to overcome drug addictions and in no way wish to diminish their plight, we are mindful of the impact their actions might have on community safety.

[25] The same is true here. R.W. had several opportunities to modify his behavior since his first involvement in the juvenile court system at age fourteen, and he was not sent to DOC until his fourth petition to modify was filed. Although R.W. was successful at White's, R.W. continuously violated probation after his successful completion of the White's program, including numerous positive drug screens. Even without considering the video shown at the modification hearing, R.W. has committed more than one weapon offense and has continued to fall into a pattern of criminal conduct despite the services and resources provided to R.W. R.W.'s behavior is destructive to himself and the community. The mere fact that less restrictive placement options were available to the juvenile court does not mean R.W. is entitled to relief.

The juvenile court placed R.W. in the DOC because—after issuing dispositional orders with regard to R.W. several times—the juvenile court felt placement in the DOC was the only way for R.W. to obtain the services he needed prior to becoming an adult. R.W.'s probation officer testified that she could not help R.W. anymore and was "at a loss" for what to do, except to get R.W. help in the DOC with the "multiple programs" available to him there. Tr. Vol. II pp. 111-12. Based on the record before us, we cannot say that the juvenile court abused its discretion in placing R.W. in the DOC. We affirm.

## Conclusion

The juvenile court did not abuse its discretion in placing R.W. in the DOC. We affirm.

Affirmed.

Vaidik, C.J., and Najam, J., concur.